1  **DOUGLAS L. RAPPAPORT (SBN 136194)**
   **KIRSTEN L. HAIGH (SBN 306672)**
2  The Law Offices of Douglas L. Rappaport
   260 California Street, Suite 1002
3  San Francisco, CA 94111
   Tel. (415) 989-7900
4  Fax. (415) 989-7950

5  Attorneys for Defendant
   **JOCELYN SARAH KIRSCH**
6

7  UNITED STATES DISTRICT COURT

8  FOR THE NORTHERN DISTRICT OF CALIFORNIA

9  SAN FRANCISCO VENUE

10

11 UNITED STATES OF AMERICA,                  Case No.: 3:17-CR-00485 (New Case)
                                              Case No.: 3:16-CR-00479 (Revocation)
12          Plaintiff,

13     v.                                     **DEFENDANT JOCELYN SARAH
                                              KIRSCH'S POSITION REGARDING
14 JOCELYN SARAH KIRSCH,                      SENTENCING IN CASES ENDING
                                              00485 AND 00479.**
15          Defendant.
                                              Date:  March 2, 2018
16 _____/          Time:  10:00 a.m.
                                              Judge Charles R. Breyer
17

18 TO THE UNITED STATES OF AMERICA, PLAINTIFF, AND ALEX TSE, UNITED STATES
   ATTORNEY; THE ASSISTANT UNITED STATES ATTORNEY RANDALL LEONARD; AND
19 TO THE CLERK OF THE ABOVE-ENTITLED COURT:

20                        **INTRODUCTION**

21      On March 2, 2018, Ms. Jocelyn Sarah Kirsch, a 32-year-old woman who is in recovery for

22 Impulse Control Disorder, will come before this Court for sentencing on an 11(c)(1)(C) plea

23 agreement wherein she and the government jointly recommend a sentence of 24 months

24 imprisonment, pursuant to her guilty plea for one count of unauthorized use of access devices in

25 violation of 18 U.S.C. § 1029(a)(2) and admission of one violation of supervised release for the same

26 offense.

27      Medical experts agree that Ms. Kirsch's Impulse Control Disorder is an addiction, an

28 addiction that can be managed through appropriate treatment and medication. Though Probation

Officers Romero and James believe 24 months prison is insufficient, implying treatment cannot help Ms. Kirsch, these opinions are contrary to medical opinion. During the instant offense – though prior to any investigation by law enforcement – Ms. Kirsch recognized her medication was no longer working and reached out to her therapist seeking help. She began seeing a new doctor, who over the next several months, found the appropriate medication to keep Ms. Kirsch's symptoms in remission.

There have been two documents submitted to this Court in preparation for Ms. Kirsch's sentencing: (1) the Presentence Report disclosed February 13, 2018; and (2) the Rule 12 Memorandum dated January 24, 2018 ("Memorandum") provided to the Court pursuant to Crim. L.R. 32.1-1.

Below in Section I, Ms. Kirsch responds to the sentencing recommendation of both documents, and in light of the section 3553 factors, Ms. Kirsch respectfully requests this Court impose the sentence agreed upon by both parties: 24 months incarceration followed by three years supervised release and no fine. In Section II, Ms. Kirsch lays out specific objections to the Rule 12 Memorandum.

## POINTS AND AUTHORITIES AND ARGUMENT

**I.      A SENTENCE OF 24 MONTHS PRISON IS  SUFFICIENT BUT NOT GREATER THAN NECESSARY TO FULFILL THE PURPOSES OF SENTENCING.**

Though courts have considerable discretion at sentencing, each sentencing judge must start by accurately calculating the Guideline range, then consider fully the factors set forth in 18 U.S.C. § 3553(a) and impose a sentence that is sufficient but not greater than necessary to achieve the statutory objectives of sentencing. *Rita v. U.S.* 551 U.S. 338, 347 (2007); *Gall v. U.S.,* 552 U.S. 38, 49-50 (2007). Appellate courts will review sentencing determinations under a differential, abuse of discretion standard. *Gall*, supra, 552 U.S. at 51.

**A.      Guideline Ranges**

Ms. Kirsch agrees with the PSR and Memorandum insofar as that they state the guideline range for her new offense is 15-21 months and the range for her revocation is 4-10 months. When there is both a new sentence and a revocation of an existing term of supervised release for the same

offense, Courts have discretion whether to run the two concurrently or consecutively.[1] 18 U.S.C. §

3584; *United States v. Rodriguez-Quinitanilla*, 442 F.3d 1254, 1256 (10th Cir. 2006.) Here, the

11(c)(1)(C) plea is a global resolution of both matters for 24 months prison. Even assuming the

Court would find that a consecutive sentence was appropriate, 24 months is still well within in the

19-31 month consecutive sentence range (15-21 months for the underlying offense, plus 4-10 months

for the Rule 12 violation).

**B.     The 18 U.S.C. § 3353 Factors Show 24 Months Prison is Sufficient But Not Greater Than Necessary to Fulfill the Purposes of Sentencing**

In many aspects of her life, Ms. Kirsch is a highly functioning individual. At 32 years old,

she is employed as an enterprise marketing lead at Verta Health. She and her long-time boyfriend

Matt Trifiro live in his home in Berkeley along with his two children, ages six and nine. (PSR ¶ 50;

Also attached as Exhibit "A" is a letter from Mr. Trifiro.) Ms. Kirsch has become a mother figure

to the two boys.  (*See* Exhibit "A".)  In Ms. Kirsch's spare time, she paints and volunteers at the

Society for the Prevention of Cruelty to Animals, where she has been volunteering for 6 years.  (PSR

¶ 51.)  From an outsider's perspective, Ms. Kirsch has a very comfortable and traditional life.

However, what most do not see is the long-lasting affects of the sexual, physical, and mental abuse

she experienced throughout her childhood and early adulthood. (PSR ¶ 47-48.) Ms. Kirsch pays out-

of-pocket for weekly therapy sessions to address her Post Traumatic Stress Disorder, Anxiety,

Depression, and Impulse Control Disorder - which can commonly be understood as an addiction,

similar to alcoholism. (PSR ¶¶ 63, 65.) She also meets with a psychiatrist. (PSR ¶ 65.)

At the time of the underlying offense, Ms. Kirsch's two friends provided their credit card

information to Ms. Kirsch for authorized purchases.  But just like one drink will turn into twelve for

an alcoholic, Ms. Kirsch began using the credit cards for unauthorized purchases for petty things like

cat litter, a hair styling, or pillow cases - items Ms. Kirsch could readily afford. This occurred at a

time where Ms. Kirsch's psychiatric symptoms were severe. And around this same time – prior to

any investigation by law enforcement – Ms. Kirsch realized her medication was no longer working

---

[1]Though the guidelines favor consecutive sentences, these guidelines are not binding, rather they are advisory in nature. *United Sates v. Booker*, 543 U.S. 220 (2005); U.S. v. Taylor, 628 F.3d 1231 (10th Cir. 2010)(reversing where court did not understand it could make revocation sentence concurrent.)

1    and shared her concerns with her therapist who recommended a new psychiatrist, Dr. Hariprassad.

2          In a letter attached hereto as Exhibit "B", Dr. Hariprassad opines Ms. Kirsch came to him

3    "in a time of crisis as [Ms. Kirsch's] medication was no longer working." After several months of

4    trial and error, they have found the appropriate medication and dosage for Ms. Kirsch, and the good

5    news is that her symptoms are now in remission. It is Dr. Hariprassad's opinion that "[s]o long as

6    Ms. Kirsch is able to receive the appropriate medication and care, [he] anticipate[s] that her

7    psychiatric symptoms can be maintained in remission." (*See* Exhibit "B".)

8          Ms. Kirsch shares this information, not to avoid responsibility, but to provide context for the

9    offense and show the Court that she is amenable to treatment. While probation is clearly upset with

10   her, Ms. Kirsch is not someone who needs to be incarcerated to prevent the public from petty thefts.

11   Rather, she is someone suffering from mental illness, mental illness that can be appropriately

12   managed.

13         Ms. Kirsch immediately took responsibility for her conduct by entering a plea without any

14   litigation. She understands that she erred in not seeking help sooner and for having used the credit

15   cards of her friends without their authorization. She should have known to never have accepted the

16   credit card information of another in the first place. She feels great shame and remorse for having

17   betrayed her friends' trust. (PSR ¶ 21.) Further, she feels immense guilt for how this conduct will

18   also disrupt her family and create unnecessary chaos for the children.

19         Two years in prison and three years of supervised release is a considerable amount of time

20   and will provide sufficient deterrence. Ms. Kirsch is genuinely remorseful for her poor judgment and

21   has been actively addressing the underlying mental health issues. Not only has she been able to keep

22   her symptoms in remission, even with her criminal case ongoing, she has shown her commitment

23   to rehabilitation and minimizing further harm to others by actively preparing for her time in custody.

24         While Ms. Kirsch is in custody, she will not have access to her therapist or psychiatrist.

25   Worse, she will not have access to her  "two most pivotal medications. . .because [they] are

26   controlled substances that the Bureau of Prisons will not prescribe." (Exhibit "B".) As such, she is

27   working with her psychiatrist to try to find a new combination of medications to take  during her

28   time in custody. Knowing two years without her current therapist and psychiatrist will be

challenging, Ms. Kirsch has arranged to immediately resume treatment with her current providers upon release.

In addition to preparing mentally for her time in custody, Ms. Kirsch and Mr. Trifiro have been meeting with a family therapist to learn how to make the transition as smooth as possible for the two children who have become quite attached to Ms. Kirsch. (Attached as Exhibit "C" is a letter from the family therapist; PSR ¶ 64)

For a young woman whose actions were motivated by addiction and mental illness, who has voluntarily sought treatment, been able to keep her psychiatric symptoms in remission as a result of this treatment, and sees the harm she has caused her friends (the victims in this case) and her family, a 24-month prison sentence with three years supervised release is sufficient but not greater than necessary to achieve the statutory purposes of sentencing. *Rita*, supra, 551 U.S. at 347. Ms. Kirsch requests that the Court impose the 24-month prison sentence as agreed upon by the parties in the 11(c)(1)(C) plea agreement.

## II.    OBJECTIONS TO THE FORM 12 MEMORANDUM

In response to Supervised Release Officer Jennifer James's January 24, 2018 Memorandum, Ms. Kirsch, through Counsel, encouraged probation to treat the Memorandum as a Presentence Report because it opines on the propriety of the underlying sentence in Ms. Kirsch's new matter. Counsel also raised various objections to address factual discrepancies and legal issues in the Memorandum pursuant to Crim. L.R. 32-4 and 32-5. (A copy of the of the February 2, 2018  Objections to the Memorandum ("Objections") attached as Exhibit "D".) Probation respectfully declined to make any revisions or treat the Memorandum as a Presentence Report. (Probation's February 5, 2018 response is attached as Exhibit "E".) For the Court's convenience, Defense Counsel's objections are summarized below.

### A.    Objection 1: Ms. Kirsch Moves to Strike the *Rolling Stone* Article

Ms. Kirsch moves to strike the *Rolling Stone* article – an article written while Ms. Kirsch's prior case was ongoing. Certainly the article is scandalous and characterizes Sarah as a villain, which no doubt helped sell magazines and brought in advertising dollars.  However, unlike presentence reports which are vetted by both the prosecution and defense for accuracy, the *Rolling Stone* writer

1   was under no obligation to be impartial or accurate. Submitting this article to the Court serves no
2   legitimate purpose and is no different than asking a family law judge to decide a contested issue in
3   a celebrity divorce by reading *US Weekly*. Thus, Ms. Kirsch is requesting that this Court disregard
4   the *Rolling Stones* article and exclude it from its consideration at sentencing.

**B.    Objection 2: Ms. Kirsch Admitted One Violation of Supervised Release**

5          Page 3 of the Memorandum alleges that "Ms. Kirsch is before the Court on nine violations
6   of supervised release. . ."   While it is true that in her written Plea Agreement Ms. Kirsch agreed to
7   "plead guilty to the allegations in the Form 12," it is misleading to suggest that she is before the court
8   *for sentencing* on nine violations of supervised release. As the Court may recall, Ms. Kirsch admitted
9   only one violation of supervised release, not nine. The change of plea hearing transcript is appended
10  to the Objections in Exhibit "D".

**C.    Objection 3: Factual Discrepancies Regarding Restitution Payments**

11
12         Page 3 of the Memorandum suggests that Ms. Kirsch failed to make payments and used the
13  age-old excuse "they must have gotten lost in the mail" or that the Clerk's office lost the payment;
14  the implication of these statements being that Ms. Kirsch was not making the payments and was lying
15  to probation.  However, the true facts, as verified by bank statements, show that Ms. Kirsch was
16  attempting to make her payments and the checks did get lost.

17         While it is true that there was a ten-month period where the Eastern District of Pennsylvania
18  had not received restitution payments, a review of Ms. Kirsch's bank statements show Ms. Kirsch had
19  set up her USAA bank account to automatically send e-checks in the amount $500/month to the
20  Eastern District of Pennsylvania - twice the $250/month she was required to pay at the time. In other
21  words, checks were being issued, but for some not reason were not received. While Ms. Kirsch and
22  Probation were working to determine why these checks had not been deposited, Ms. Kirsch mailed
23  a check for the ten months of unreceived restitution payments. The issue with the autopayment of e-
24  checks through Ms. Kirsch's bank account could not be resolved, so Ms. Kirsch mailed paper checks
25  until restitution was completed. (Appended to Exhibit "D" are bank statement and email verification.)

**D. Objection 4: Ms. Kirsch Voluntarily Increased Her Monthly Payments**

26
27         Page 3 of the Memorandum also suggests, somewhat cryptically, that Ms. Kirsch would
28  make excuses for not increasing her monthly payments when asked. Again, a review of Ms. Kirsch's

emails and bank statements appended to the Objections in Exhibit "D", verify that Ms. Kirsch had *voluntarily* increased her monthly restitution payments eleven months before being asked to do so. In April of 2015, she voluntarily began issuing checks in the amount of $500/month, though only required to pay $250/month. Eleven months later, in February of 2016, that probation formally requested Ms. Kirsch agree to pay $500/month, for which Ms. Kirsch did not object.

**E.   Objection 5: Factual Discrepancies Regarding Ms. Kirsch's Ongoing Treatment**

Page 4, Paragraph 2, of the Memorandum attempts to provide a summary of the treatment Ms. Kirsch has been receiving, but there are a handful of factual discrepancies. To clarify, the following facts are provided:

Ms. Kirsch completed a program at Pathways Institute of Impulse Control ("Pathways") in 2012. Though Pathways has since closed down, Ms. Kirsch continues to meet weekly with Tara Kline, PsyD, a psychological assistant whom she began working with in 2012 at Pathways. In November, 2016, during the time period in which the underlying offense was occurring and before discovery by law enforcement, Ms. Kirsch felt that her psycho tropic medication was not working. Thereafter, Tara Kline referred Ms. Kirsch to psychiatrist Dr. Hariprassad. Ms. Kirsch has been meeting with Dr. Hariprassad since November of 2016 and, after several months of trial and error, he has found a course of medication that has stabilized Ms. Kirsch. (A copy of a letter from Dr. Hariprassad is appended to the Objections in Exhibit "D" and attached to this Sentencing Memorandum as Exhibit "B".)

**F.   Objection 6: Ms. Kirsch's Psychiatric Symptoms are in Remission Now That She is On Appropriate Medication**

In describing Ms. Kirsch's ongoing treatment, Page 4, Paragraph 2 of the Memorandum opines that the only way Ms. Kirsch will stop stealing is if she is incarcerated. This statement is personal opinion and is contrary to medical opinion.

As the letter from Dr. Hariprassad (Exhibit "B") illustrates, Ms. Kirsch's psychiatric symptoms were severe at the time of the underlying offense. More importantly, however, Dr. Hariprassad has found the appropriate medication and dosage for Ms. Kirsch and it is his opinion that "[s]o long as Ms. Kirsch is able to receive the appropriate medication and care, I anticipate that her *psychiatric symptoms can be maintained in remission.*" (Emphasis added).

### G.   Objection 7: Description of Underlying Facts

Though Probation's role is to provide objective reports with verified information and recommendations to assist the Court, the description of Ms. Kirsch's underlying conduct for the admitted violation on Page 4, Paragraph 1 of the Memorandum repeatedly describes the facts subjectively with language like "and perhaps most egregiously," "one of the most disturbing pieces of evidence. . . ," or ""flaunting her thievery." This language seems misplaced, more akin to the words of an advocate than an objective reporter of facts. The Court is well equipt to come to its own conclusions about Ms. Kirsch's conduct based on an objective explanation of the facts.

Additionally, in the last line of this paragraph, it is stated that "on one occasion after she used Ms. Fink's credit card number to have her hair straightened, she texted Ms. Fink *to tell her how good her hair looked.*" (Emphasis added.) This statement about "how good her hair looked" is not accurate. Rather, during a text message conversation with Ms. Fink, Ms. Kirsch wrote "I got my hair done and they put sooooo much product in it Ugh And were so rough." (This text message appended to the Objection in Exhibit "D".) And while this might appear to be a small discrepancy, the misstatement inaccurately creates the impression that Ms. Kirsch is vain, boastful and lacks modesty, character assassination fitting for the *Rolling Stone* article but inappropriate in a legal document prepared for this Court.

### CONCLUSION

For the above stated reasons, Jocelyn Sarah Kirsch respectfully requests that this Court impose a sentence of 24 months prison, followed by three years supervised release and impose no fine, as outlined in her written plea agreement.

Respectfully submitted this 22nd day of February, 2018

By:   _____/s/_____
**KIRSTEN L. HAIGH**

By:   _____/s/_____
**DOUGLAS L. RAPPAPORT**
Attorneys for Defendant
**JOCELYN SARAH KIRSCH**

# EXHIBIT A

Matthew G Trifiro
6 Harvard Circle | Berkeley CA 94708
(206) 390-3161

February 7, 2018

Dear Judge Breyer,

I am a close friend of Sarah Kirsch and I wish to offer a character reference.

I have known Sarah for almost three years, and have become especially close to her in the past two. Sarah lives in my Berkeley home along with me and my two boys, Alexander and Trevor, ages 7 and 11. Over the last 24 months I have spent an extraordinary amount of time with her, more than one might think possible (I estimate over 6,000 waking hours) and, during this time, I have been privy to nearly every aspect of her life.

From this unique perspective, I have been a keen observer of her character, which I hope to relate to you in this letter.

I have come to know Sarah as an exceptionally kind and caring person. She is thoughtful, compassionate, generous, and industrious. She works hard at her job. Her peers admire for her insight and diligence. In spite of her traumatic upbringing and today's circumstances, I have seen how she brings good into the world and impacts people in positive ways.

I am not a psychologist, nor do I have any formal training in mental health, but I can assert from my personal experience that Sarah's brief return to her addictive behavior was the exception, not the rule. She has, and will, pay a heavy price for this transgression. In our society, to be labeled a "felon" is to be vilified, and Sarah is on the receiving end of a particularly harsh version of this. She's smart, charismatic, and college educated—and seems to have every advantage—so it is easy for others to write her off as a hardened criminal, as someone who "should know better." But such rushes to judgement are superficial. They do not reflect the true depth of her character, the unique aspects of her mental health struggles, and her many redeeming qualities.

Sarah knows what she did is wrong; not a day goes by that we don't talk about the shame and guilt she feels for having hurt her friends. She is sorry and remorseful. Her relapse was real, and tragic, but she should not be defined by her wrongdoing. She is an asset to the community. She brings a great deal of compassion, integrity, respect and humility to the people in her life. She loves and supports her friends, her family, her job, her volunteer work, and the community at large. She has become an essential part of my family and a role model to my two young children.

To me, one of the most striking things about Sarah, is how hard she has worked to rehabilitate herself. Every week, at significant personal expense and time, she sees a highly-specialized therapist, Tara Kline, to work on her impulse disorder. She is also under the supervision of medical doctors who seek to rebalance her brain chemistry and treat her professionally diagnosed depression, PTSD and anxiety disorders with prescription drugs. The level of commitment Sarah has demonstrated in this endeavor is not only inspiring, but indicative of the fact that she takes it seriously and realizes it will be a lifelong commitment.

In many small ways, through her words and actions, Sarah also has taught me a great deal about how to treat other people. For example, she is the kind of person who remembers everyone's birthday, who always gets them a card, and often delivers it with a thoughtful, handmade gift. This has helped me to personally and viscerally understand how tiny, caring gestures can have a big impact on people. Observing her behavior has helped me be more thoughtful with my own family.

I admire Sarah's selfless devotion to those less fortunate than her. Often, when making weekend plans, we would schedule activities around her volunteer work at the animal shelter, or at the women's shelter—both causes she is passionate about. One simple story illustrates how uniquely compassionate she is. Last year, the SPCA animal shelter in the Mission was flooding and it displaced the animals. The volunteers and staff scrambled to find people who could provide temporary housing and shelter for the animals. Of course, the cute and cuddly animals found homes quickly, and Sarah could have taken one of those. Instead, she went immediately to the animal that needed it most, the blind and disabled dog that one that nobody wanted to adopt or take care of. This small incident illustrates how Sarah thinks about others and how she sacrifices for those in need.

Sarah is also always the first to rush to help a friend, whether to loan out her car or drive someone to the hospital. I can count on one hand the people in my life I know I can call at 2 a.m to ask for anything and rely on them being willing to drop everything and help. Sarah is one of those people. She has an unmistakably generous heart, would do almost anything for a friend, and who I have seen put others' needs in front of her own in times of crisis.

Sarah's imprisonment will be very hard on me and my boys, as she is integral to our family. My boys love and trust her; and I love and trust her. I grew up in a broken household and know the trauma my boys are feeling from my separation from their mother. I remember hating and rejecting every man my mother brought into our lives, and I feared it might be the same with Sarah. Instead, Sarah's kindness and thoughtfulness, her gentleness and poise, has had a dramatic positive effect on my boys. They listen to her, care about her, love her and respect her. We will miss her a great deal when she is gone. We hope to have her back in our life as soon as we can.

2

Thank you, Your Honor, for considering my thoughts and experiences as you deliberate on Sarah's sentence. I hope you are able to see that despite her mistakes and shortcomings, that she is a terrific person, worthy of another chance. If there is anything I can do to support Sarah, to assist in her recovery, I will be there for her and the community.

Sincerely,

Matt Trifiro

# EXHIBIT B



## intuitivepsychiatry
### INTEGRATIVE MENTAL HEALTH

VIA FAX TO KIRSTEN HAIGH (415.889.7950)

RE: Sarah Jocelyn Kirsch

To Whom it May Concern:

I first began treating Sarah Kirsch in November of 2016.   She was referred to me by her therapist Tara Kline in a time of crisis as Ms. Kirsch's medication was no longer working. I reviewed her medical history, and I met with her and conducted independent testing which revealed scores of 15 on the PHQ9 (depression rating instrument, 15==moderate severe depression) and a top anxiety score of 18 on the GAD7 18 (anxiety rating instrument, 18==severe anxiety)by May of  2017. I believe that her prior medication was, at best, partially effective. We immediately began working together through a course of trial and error as is traditionally done. Although her case is particularly challenging, I am happy to say that in recent months we have found a course of medication that has been effective in addressing her underlying psychological issues.   As of December 2017, her GAD7 was at 5 (remission, anxiety) and PHQ9 was at 6 (very mild, depression.)

While we have finally found what we believe to be the appropriate medication and dosage, we are weaning her off of the two most pivotal medications, clonazepam and modafinil, in preparation for her time in custody.   This is because these two medications are controlled substances that the Bureau of Prisons will not prescribe. However, Ms. Kirsch and I have discussed her coming back to see me once she is released from custody so she can be administered the appropriate medicines. So long as Ms. Kirsch is able to receive the appropriate medication and care, I anticipate that her psychiatric symptoms can be maintained in remission.

Sincerely,

Ravi Hariprasad, MD, MPH
Psychiatrist

The Flood Building • 870 Market Street, Suite 1107 • San Francisco, CA 94102
415.653.3100 [tel] • 415.650.5004 [fax] • www.intuitivesf.com

# EXHIBIT C

**DAVID SCOTT MAY, M.D.**                    EMAIL: DAVIDSCOTTMAY@MAC.COM

ADULT AND CHILD PSYCHIATRY                    45 ELM AVENUE • MILL VALLEY, CA 94941
                                              TELEPHONE (415) 888-8782
                                              FAX (310) 470-3331


Dear Ms. Monica Romero,                    January 27, 2018

This letter is to confirm that I am actively meeting with Ms. Kirsch and her boyfriend, Mr. Trifiro, to help them prepare for Ms. Kirsch's time in custody both as a couple and as co-parents. I first met with Ms. Kirsch and Mr. Trifiro on June 8, 2017 and am continuing to meet with them both as needed until Ms. Kirsch's incarceration.


Sincerely,

David S. May, M.D.
Board Certified Child and Adult Psychiatrist
Assistant Clinical Professor of Psychiatry, UCLA School of Medicine

# EXHIBIT D

LAW OFFICES OF
DOUGLAS L. RAPPAPORT
260 CALIFORNIA STREET, SUITE 1002
SAN FRANCISCO, CA 94111
(415) 989-7900
FAX (415) 989-7950

February 2, 2018

**VIA MESSENGER & EMAIL**
Jennifer James, Supervised Release Officer
U.S. Probation Officer Specialist, ND/CA
450 Golden Gate Avenue, Suite 176884
San Francisco, California 94523

jennifer_james@canp.uscourts.gov

Re:     *United States vs. Sarah Kirsch*
        *USDC-NCA Case No. 16-CR-479-CRB*
        *Objections to Memorandum*

Ms. James,

We are in receipt of your Memorandum to the Court dated January 24, 2018 ("Memorandum") and have several comments. As a threshold issue, given that your Memorandum is as much a Presentence Report on Ms. Kirsch's pending criminal matter as it is a Dispositional Report and Recommendation under Crim. L.R. 32.1-1, wouldn't it be more appropriate to comply with the provisions of Crim. L.R. 32-4? This is especially true where you opine on the propriety of the sentence in her new matter, specifically recommending that the Court not follow the proposed disposition.

Thus, in accord with the procedures set forth in Crim. L.R. 32-4 and 32-5, we submit the following response addressing certain factual discrepancies and legal issues:

**Objection 1: Attaching the *Rolling Stone* Article is Improper**
Attaching a copy of an article from *Rolling Stone* about Ms. Kirsch and her former case is entirely inappropriate. Certainly the article is scandalous and characterizes Sarah as a villain, which no doubt helped sell magazines and brought in advertising dollars. However, unlike presentence reports which are vetted by both the prosecution and defense for accuracy, the *Rolling Stone* writer was under no obligation to be impartial or accurate. Submitting the article to the Court is no different than asking a family law judge to decide a contested issue in a celebrity divorce by reading *Us Weekly*. Thus, in order to correct the factual inaccuracies, and that the *Rolling Stone* article serves no purpose other than to subversively defame Ms. Kirsch's character, the January 24, 2018 Memorandum should be withdrawn and new memorandum submitted pursuant to Crim. L.R. 32-4.

1

**Objection 2: Ms. Kirsch Admitted One Violation of Supervised Release**

Page 3 of the Memorandum alleges that "Ms. Kirsch is before the Court on nine violations of supervised release. . ."

While it is true that in her written Plea Agreement Ms. Kirsch agreed to "plead guilty to the allegations in the Form 12," it is somewhat misleading to suggest that she is before the court *for sentencing* on nine violations of supervised release. More accurately, Ms. Kirsch admitted only one violation of supervised release, not nine. Her admission occurred in open court at the time of her change of plea. Though I recollect that you were present during this proceeding, a copy of the transcript is attached hereto as Exhibit "A" should there be any dispute.

**Objection 3: Factual Discrepancies Regarding Restitution Payments**

Page 3 of the Memorandum alleges that "[w]hen I attempted to get Ms. Kirsch to . . .make payments. . .she would state she mailed in checks 'but they must have gotten lost in the mail,' or alternately, would place blame on the Clerk's office for not reconciling their books timely."

This statement is not accurate. I would like to draw your attention to the following facts: In April of 2015, Ms. Kirsch set up autopayment e-checks through her USAA bank account to automatically send checks in the amount of $500/month to the Eastern District of Pennsylvania - twice the $250/month she was required to pay at the time.

On February 18, 2016, eleven months after autopayment was set up, you emailed Ms. Kirsch because the Eastern District of Pennsylvania had not received a restitution payment since an April 21, 2015 payment for $500. (Your February 18, 2016 email is attached hereto as Exhibit "B".) As you and Ms. Kirsch later learned, Ms. Kirsch was timely issuing monthly checks through the autopayment system of her USAA Bank Account, but the clerks office was having problems receiving these checks. Attached hereto as Exhibit "C" are Ms. Kirsch's bank statements showing that a monthly check in the amount of $500 was issued in the months that no checks were allegedly received.

During the time you and Ms. Kirsch were trying to determine why her auto checks were not being received, Ms. Kirsch sent a check for the 10 months of unreceived restitution payments. (*See* Statement Period 2/09/16-3/09/16 page 3 in Exhibit "C".) The issue with the autopayment of e-checks through Ms. Kirsch's bank account could not be resolved, so Ms. Kirsch began mailing paper checks and continued to do so until restitution was completed.

These facts show that there was in fact an issue receiving Ms. Kirsch's checks - whether it was an issue with the mail or the clerks office - it was not a deliberate attempt on her part to avoid making her restitution payments as the Memorandum suggests. Ms. Kirsch requests the language in the Memorandum be removed or edited to accurately reflect what occurred.

**Objection 4: Ms. Kirsch Voluntarily Increased Her Monthly Payments**

Page 3 of the Memorandum cryptically suggests that Ms. Kirsch was reluctant or refused to increase her restitution payment commensurate with her income.

2

This statement is not true. Though you asked Ms. Kirsch to increase her required payment from $250/month to $500/month on February 18, 2016, Ms Kirsch issued checks in the amount of $500 since April of 2015, or for *eleven months* before your request. (Your February 18, 2016 request is attached hereto as Exhibit "D". Proof that she had been making $500/month payments is verified in Objection 2 above). In other words, not only did Ms. Kirsch not object to the increase, Ms. Kirsch had voluntarily doubled her restitution payments on her own 11 months before the formal request. These facts are antithetical to what is written in the Memorandum.

Ms. Kirsch requests the language in the Memorandum be removed or edited to accurately reflect what occurred.

**Objection 5: Factual Discrepancies Regarding Ms. Kirsch's Ongoing Treatment**

Though Page 4, Paragraph 2, of the Memorandum attempts to provide a summary of the treatment Ms. Kirsch has been receiving, there are a handful of factual discrepancies. To clarify, the following facts are provided:

Ms. Kirsch completed a program at Pathways Institute of Impulse Control ("Pathways") in 2012. Though Pathways has since closed down, Ms. Kirsch continues to meet weekly with Tara Kline, PsyD, a psychological assistant who she began working with in 2012 at Pathways. In November, 2016, during the time period in which the underlying offense was occurring and before discovery by law enforcement, Ms. Kirsch felt that her psychotropic medication was not working. Thereafter Tara Kline referred Ms. Kirsch to psychiatrist Dr. Hariprassad. Ms. Kirsch has been meeting with Dr. Hariprassad since November of 2016 and, after several months of trial and error, he has found a course of medication that has stabilized Ms. Kirsch. (Attached hereto as Exhibit "E" is a letter from Dr. Hariprassad.)

The Memorandum should be amended to accurately reflect the treatment Ms. Kirsch has been receiving.

**Objection 6: Ms. Kirsch's Psychiatric Symptoms Are in Remission When on Appropriate Medication**

In describing Ms. Kirsch's ongoing treatment, Page 4, paragraph 2 of the Memorandum opines that the only way Ms. Kirsch will stop stealing is if she is incarcerated. This statement is your personal opinion and is contrary to medical opinion.

As the letter from Dr. Hariprassad (Exhibit "E") illustrates, Ms. Kirsch's psychiatric symptoms were severe at the time of the underlying offense. More importantly, however, is that Dr. Hariprassad has found the appropriate medication and dosage for Ms. Kirsch and it is his opinion that "[s]o long as Ms. Kirsch is able to receive the appropriate medication and care, [Dr. Hariprassad] anticipate[s] that [Ms. Kirsch's] *psychiatric symptoms can be maintained in remission*." (Emphasis added).

Ms. Kirsch requests that your subjective opinion be removed or amended to include Dr. Hariprassad's opinion.

//

3

**Objection 7: Description of Underlying Facts**

In describing Ms. Kirsch's underlying conduct for the admitted violation on page 4 paragraph 1, you repeatedly insert your subjective opinion with language like "and perhaps most egregiously," "one of the most disturbing pieces of evidence. . . ," or ""flaunting her thievery." There is more than one interpretation of Ms. Kirsch's conduct and the Court can come to its own conclusions based on an objective recitation of the facts. Inserting personal opinions in describing Ms. Kirsch's conduct seems misplaced and lacks professionalism.

Additionally, in the last line of this paragraph, it is stated that "on one occasion after she used Ms. Fink's credit card number to have her hair straightened, she texted Ms. Fink *to tell her how good her hair looked.*" (Emphasis added.)

This statement about "how good her hair looked" is not accurate. Rather, during a text message conversation with Ms. Fink, Ms. Kirsch wrote "I got my hair done and they put sooooo much product in it Ugh And were so rough." (This text message is attached hereto as Exhibit "F".) And while this might appear to be a small discrepancy, the misstatement creates the impression that Ms. Kirsch is vain, boastful and lacks modesty. This is especially damning given that the first line of the *Rolling Stone* article pertains to Sarah's alleged vanity, albeit related to her fake "boobs" rather than her hair. (Coincidentally, what is misleading about the *Rolling Stone* article is that the writer omitted that Sarah's father, a plastic surgeon, insisted that she have this operation and performed it himself when she turned eighteen. Sarah had previously confided to U.S. Probation, prior to knowing that the article was attached to the Memorandum, that her father forced her to have this procedure).

Thus, in order to correct the factual inaccuracies in the January 24, 2018 Memorandum, it should be withdrawn and a new memorandum submitted pursuant to Crim. L.R. 32-4. Should you decide not to do so, please inform us on or before February 7th, so we can file appropriate objections with the Court.

If you have any questions or concerns please feel free to contact me at 415-989-7900. Thank you.

Very truly yours,

KIRSTEN L. HAIGH

DOUGLAS L. RAPPAPORT

w/enc.

4

# EXHIBIT A

Pages 1 - 13

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Charles R. Breyer, Judge

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| VS. | ) | NO. CR 16-0479 CRB |
| | ) | CR 17-0485 CRB |
| JOCELYN KIRSCH, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

San Francisco, California
Wednesday, November 15, 2017

<u>TRANSCRIPT OF PROCEEDINGS</u>

<u>APPEARANCES:</u>

For Plaintiff:

        BRIAN J. STRETCH
        United States Attorney
        450 Golden Gate Avenue
        San Francisco, California  94102
  BY:  RANDALL LEONARD
        ASSISTANT UNITED STATES ATTORNEY

For Defendant:

        OFFICES OF DOUGLAS L. RAPPAPORT
        260 California Street, 10th Floor
        San Francisco, CA 94111
  BY:  DOUGLAS L. RAPPAPORT
        KIRSTEN HAIGH
        ATTORNEYS AT LAW

Also present:  Jennifer James, Probation, on CR-16-0479 CRB

Reported By:  Rhonda L. Aquilina, CSR #9956, RMR, CRR
          Court Reporter

1   <u>Wednesday - November 15, 2017</u>                    <u>1:07 p.m.</u>

2                     P R O C E E D I N G S

3                        ---000---

4        THE CLERK:  Calling criminal action CR 16-0479, USA

5   versus Jocelyn Kirsch, also criminal action CR 17-0485.

6        MR. LEONARD:  Good afternoon, Your Honor.  Randy

7   Leonard for the United States.

8        MS. HAIGH:  Good afternoon, Your Honor.  Kirsten

9   Haigh, H-A-I-G-H, for Mr. Rappaport, for Ms. Kirsch, who is

10  present.

11       MR. RAPPAPORT:  Good afternoon, Your Honor.  Douglas

12  Rappaport as well on behalf of Ms. Kirsch.

13       PROBATION OFFICER:  Good afternoon, Your Honor.

14  Jennifer James with Federal Probation here on the 2016 docket

15  number.

16       THE COURT:  Well, shouldn't we do the 2017 first?

17     How do you propose to -- how do you want to do it?

18       MR. LEONARD:  However the Court wants to do it.

19       THE COURT:  Well, I think my understanding is the Plea

20  Agreement, with respect to the -- oh, I see.  Both 16 and 17

21  are unresolved actions; is that right?  I mean, we don't have a

22  supervised release.  They're both --

23       MS. HAIGH:  Correct.  This agreement will resolve both

24  cases together.

25       THE COURT:  Well, then we can do them simultaneously.

```
 1    No reason not to.
 2            MR. LEONARD:  I think that's right, Your Honor.
 3        Our intention was to wrap them all in together for a
 4    global resolution.
 5            THE COURT:  That's fine.
 6        Okay.  Would you administer the oath to Ms. Kirsch?
 7            THE CLERK:  Please raise your right hand.
 8                    (Defendant sworn.)
 9            THE DEFENDANT:  Yes, I do.
10            THE COURT:  What is your full name?
11            THE DEFENDANT:  Jocelyn Sarah Kirsch.
12            THE COURT:  When were you born?
13            THE DEFENDANT:  July 20th, 1985.
14            THE COURT:  How old are you?
15            THE DEFENDANT:  I'm 32.
16            THE COURT:  How far did you go in school?
17            THE DEFENDANT:  Five years of university for a
18    Bachelor of Science.
19            THE COURT:  Have you been treated recently for any
20    mental illness or addiction to narcotic drugs of any kind?
21            THE DEFENDANT:  Yes.
22            THE COURT:  And has this treatment in any manner
23    affected your ability to understand these proceedings?
24            THE DEFENDANT:  No.
25            THE COURT:  Has it affected your ability to
```

1    communicate with your attorneys?

2              THE DEFENDANT:  No.

3              THE COURT:  Have you been able to understand what your

4    attorneys have said to you, and is it your view that they have

5    been able to understand what you have said to them?

6              THE DEFENDANT:  Yes, sir.

7              THE COURT:  Have you received a copy of the charges

8    pending against you?

9              THE DEFENDANT:  Yes.

10             THE COURT:  Have you had an opportunity to discuss

11   those charges and your cases with your attorney?

12             THE DEFENDANT:  Yes.

13             THE COURT:  Are you fully satisfied with the

14   representation given to you in these cases by your attorneys?

15             THE DEFENDANT:  Yes.

16             THE COURT:  There's a Plea Agreement in this case.

17   Did you have an opportunity to read and discuss the Plea

18   Agreement with your lawyer before you signed it?

19             THE DEFENDANT:  Yes, I did.

20             THE COURT:  Do you understand all the terms of the

21   Plea Agreement?

22             THE DEFENDANT:  Yes, I do.

23             THE COURT:  Has anyone made any promise or assurance

24   that is not in this agreement?

25             THE DEFENDANT:  No, sir.

```
1          THE COURT:  Has anyone threatened you in any way to
2   persuade you to accept this agreement?
3          THE DEFENDANT:  No.
4          THE COURT:  My understanding is that this is a C plea,
5   and that if I choose not to follow the terms of the Plea
6   Agreement, I will allow the defendant to withdraw her guilty
7   plea.  That's my understanding.
8          MR. LEONARD:  That's right, Your Honor.
9          MS. HAIGH:  Yes, Your Honor.
10         THE COURT:  Okay.  Has anyone attempted in any way to
11  force you to plead guilty or otherwise threatened you?
12         THE DEFENDANT:  No.
13         THE COURT:  Has anyone made any promises or assurances
14  of any kind to get you to plead guilty, other than those that
15  are contained in the Plea Agreement?
16         THE DEFENDANT:  No.
17         THE COURT:  Are you pleading guilty of your own free
18  will because you are guilty?
19         THE DEFENDANT:  Yes.
20         THE COURT:  Are you a citizen of the United States?
21         THE DEFENDANT:  I am.
22         THE COURT:  Okay.  What are the possible criminal
23  sanctions for both of these cases?
24         MR. LEONARD:  Yes, Your Honor.  On the -- on the
25  indictment, 17-0485, the maximum penalties are 20 years
```

1   imprisonment, a $250,000 fine, or twice the gross gain or gross

2   loss, three years term of supervised release, restitution as

3   determined by the Court, and a hundred dollars mandatory

4   special assessment.

5        On the Form 12 violation, excuse me --

6        ——THE COURT:  That's what I don't understand.  Is it a

7   Form 12 violation?  I'm sorry.  I don't have it in front of me.

8             PROBATION OFFICER:  Yes.

9        THE COURT:  Well, then all she's doing on the Form 12

10  violation is admitting.

11            MR. LEONARD:  That's right, Your Honor.

12        THE COURT:  It's not a guilty plea, it's an admission.

13            PROBATION OFFICER:  Correct.

14        THE COURT:  It's an admission as to the Form 12; is

15  that right?

16            PROBATION OFFICER:  Correct.

17            MS. HAIGH:  Correct.

18        THE COURT:  Okay.  I got it now.

19     Okay.  Go ahead.

20        MR. LEONARD:  So on the Form 12 violation, the maximum

21  penalties are three years in custody, five years supervised

22  release, less any aggregated terms of custody imposed upon

23  revocation, probation is not authorized.

24        THE COURT:  Okay.  So let me explain to you the

25  difference between the two cases, so it's clear, because it's

```
 1   now becoming clear to me.
 2        When I ask you about giving up all sorts of rights, as I'm
 3   about to do that, these are rights that you have in the case in
 4   which there has been no adjudication, that is, which you are
 5   presumed to be innocent in your basic trial.
 6        In the case involving the supervised release violation,
 7   you don't have those rights.  And I will put that aside.  I
 8   just wanted to now talk about the criminal case in which you
 9   are pleading guilty -- do you understand that? -- even though
10   the disposition is going to cover both.
11             THE DEFENDANT:  Yes.
12             THE COURT:  Okay.  So as to the -- first of all, as to
13   the consequences of the guilty plea, do you understand those
14   are the possible consequences?
15             THE DEFENDANT:  (Nods.)
16             THE COURT:  Okay.  Do you understand you have the
17   right to plead not guilty to any offense charged against you,
18   and to persist in that plea.  You would then have a right to a
19   trial by jury.  At trial, you would be presumed to be innocent.
20   The Government would have to prove your guilt beyond a
21   reasonable doubt.  You would have the right to assistance of
22   counsel for your defense appointed by the Court if necessary,
23   at trial and every other stage of the proceeding; the right to
24   see and hear all the witnesses, have them cross-examined in
25   your defense.  The right on your own part to decline to
```

1   testify, unless you voluntarily elected to do so in your own

2   defense; and the right to compel the attendance of witnesses in

3   your defense.

4          Do you understand those rights?

5                THE DEFENDANT:  Yes.

6                THE COURT:  Do you understand that should you decide

7   not to testify or put on any evidence, those facts cannot be

8   used against you?

9                THE DEFENDANT:  Yes.

10               THE COURT:  Do you further understand that by entering

11  a plea of guilty, if the plea is accepted by the Court, there

12  will be no trial, and you will have given up your right to a

13  trial, as well as the other rights associated with the trial,

14  as I've just described them?

15               THE DEFENDANT:  Yes.

16               THE COURT:  What are the essential elements of the

17  offense to which the defendant is pleading guilty?

18               MR. LEONARD:  Yes, Your Honor.  The elements, excuse

19  me, are the following:

20         One, that the defendant knowingly used unauthorized access

21  devices during a one-year period from on or about June 2016

22  till on or about January 2017;

23         Two, that by using the unauthorized access devices during

24  this period, the defendant obtained things of value, value

25  aggregating $1,000 or more during that period;

1          Three, the defendant acted with the intent to defraud;

2          And, four, that the defendant's conduct in some way

3     affected commerce between one state and another state, and

4     between a state of the United States and a foreign country.

5          THE COURT:  Do you believe that if the case went to

6     trial the Government would be able to prove each element of the

7     offense beyond a reasonable doubt?  Do you believe the

8     Government can prove its case?  Yes?

9          THE DEFENDANT:  Yes, sir.

10          THE COURT:  Okay.  Looking at the Plea Agreement,

11     page 2, do you have that in front of you?

12          THE DEFENDANT:  Yes.

13          THE COURT:  Okay.  And look at paragraph two, which

14     starts on line 19; do you see that?

15          THE DEFENDANT:  Yes.

16          THE COURT:  And it goes to the end of that page.

17          THE DEFENDANT:  Yes.

18          THE COURT:  It asserts that you did certain things --

19     do you see? -- of a criminal nature.

20          And my question to you is did you read that paragraph

21     carefully before you signed the Plea Agreement?

22          THE DEFENDANT:  Yes, I did.

23          THE COURT:  And do you understand that paragraph?

24          THE DEFENDANT:  I do.

25          THE COURT:  Okay.  Is everything that is stated in

1    that paragraph true and correct?

2              THE DEFENDANT:  Yes, sir.

3              THE COURT:  Okay.  You may take the plea to this

4    charge.

5              THE CLERK:  Ms. Jocelyn Sarah Kirsch, the Government

6    has filed an information charging you in Count One with

7    unauthorized use of access devices in violation of 18 U.S.C.

8    section 1029(a)(2).

9         How do you plead, guilty or not guilty?

10             THE DEFENDANT:  Guilty.

11             THE CLERK:  Your Honor, a guilty plea has been

12   entered.

13             THE COURT:  Okay.  Finally, this Court finds the

14   defendant is fully competent, capable of entering an informed

15   plea.  The defendant is aware of the nature of the charges and

16   the consequences of the plea, and the plea of guilty is a

17   knowing and voluntary plea supported by an independent basis in

18   fact containing each of the essential elements of the offense.

19   The plea is therefore accepted, and the defendant is now

20   adjudged guilty of offense.

21        Turning now to the supervised release violation.  Is it

22   the intention of your client to admit any of the charges?

23             MS. HAIGH:  Yes, Your Honor.

24             THE COURT:  Okay.  And which charges is she prepared

25   to -- it has -- my copy in front of me has charges one, two,

```
 1   three, four, five, six, seven, eight, nine charges; is that
 2   right?  Which charges is she prepared to admit?
 3              MS. HAIGH:  Count Four, Your Honor.
 4              THE COURT:  Okay.  Charge Number 4.
 5              MR. LEONARD:  One moment, Your Honor.
 6              THE COURT:  Yes, please.
 7              MR. LEONARD:  Your Honor, in light of your question, I
 8   have noticed what I think is an essential discrepancy in the
 9   Plea Agreement, which is intended to be a global resolution,
10   particularly I'm looking at paragraph 18, and it says
11   "Defendant's Affirmations:  I agree to plead guilty."  At first
12   it's probably not the right phrasing, because it's admitting
13   the allegation, not necessarily a plea of guilty.
14        And also here we have allegations, and we can be more
15   specific and specify.
16              THE COURT:  Well, I'd be satisfied if you just admit
17   to Charge Number 4 -- Number 4 says that she admits that she
18   committed an offense while on supervised release.  That's
19   certainly adequate.
20              MR. LEONARD:  And we'd be satisfied with that as well.
21   We just want to make sure.
22              THE COURT:  So do you understand what we're saying?
23   There are a series of charges that you violated supervised
24   release in a number of ways.  One of those is a charge that you
25   committed a crime while you were on supervised release.  You've
```

1   already pled guilty this afternoon to the commission of a

2   crime.

3          So my question would be do you admit that you have

4   committed a crime while on supervised release?

5                 THE DEFENDANT:  Yes.

6                 THE COURT:  Okay.  I'll take the admission.

7          One other thing I want to point out to you, so I'm sure

8   you understand, is that this Plea Agreement, which would

9   include the supervised release violation, contemplates a

10  sentence of 24 months; is that correct?

11                MR. LEONARD:  Yes, Your Honor.

12                THE COURT:  So do you understand that?

13                THE DEFENDANT:  Yes, sir.

14                THE COURT:  In other words, if I accept the Plea

15  Agreement, you will be sentenced to 24 months; do you

16  understand that?

17                THE DEFENDANT:  I do.

18                THE COURT:  Okay.  You may take the admission.

19                THE CLERK:  Ms. Kirsch, the probation office filed a

20  petition informing the Court that you violated Charge Number 4.

21  Do you admit to being in violation of Number 4 in the petition?

22                THE DEFENDANT:  I do.

23                THE CLERK:  Your Honor, the defendant has admitted to

24  violating Charge Number 4.

25                THE COURT:  Okay.  So may these matters be referred to

1    the probation office for a further presentence report?

2              MR. FRENTZEN:  And one last thing, I have the Plea

3    Agreement, Your Honor, which the parties signed in court today.

4    I'm handing it to the courtroom deputy.

5              THE COURT:  It will be filed.  Thank you.  Thank you.

6         And we need a date for return.

7              THE CLERK:  Yes.  February 27th at 10:00 a.m.

8              THE COURT:  Thank you.

9              MR. LEONARD:  Thank you, Your Honor.

10             MS. HAIGH:  Thank you, Your Honor.

11             PROBATION OFFICER:  Thank you.

12             THE COURT:  Thank you.

13                  (Proceedings adjourned at 1:21 p.m.)

14                       ---oOo---

15

16

17

18

19

20

21

22

23

24

25

1
2
3                    CERTIFICATE OF REPORTER

4        I certify that the foregoing is a correct transcript

5    from the record of proceedings in the above-entitled matter.

6

7    DATE:    Monday, January 29, 2018

8
9
10
11
12            Rhonda L. Aquilina, CSR No. 9956, RMR, CRR
                         Court Reporter
13
14
15
16
17
18
19
20
21
22
23
24
25

# EXHIBIT B

2/1/2018



Kirsten Haigh ███████████

## Fwd: Appointment next Thursday at 2:00pm

1 message

sarah k ◄██████████████████████                                    Fri, Jan 26, 2018 at 2:08 PM
To: Kirsten Haigh ███████

Sarah



██████████
LinkedIn

--------- Forwarded message ---------
From: <jennifer_james◄████████████████████
Date: Thu, Feb 18, 2016 at 12:46 PM
Subject: Re: Appointment next Thursday at 2:00pm
To: Sarah ◄███████████████████████

3:00pm works fine.  See you then.

Jennifer J. James
U.S. Probation Officer Specialist, ND/CA
450 Golden Gate Avenue, Suite 17-6884
San Francisco, California 94523
███████████
███████████
███████████

From:  Sarah ███████████████████
To:     jennifer_james◄████████████████
Date:  02/18/2016 11:57 AM
Subject:     Re: Appointment next Thursday at 2:00pm

Ok, no problem. If we could meet at 3 that would be helpful, thank you. I
figured out the issue with my bank and am bringing a check as well.

Thanks,

On Feb 18, 2016, at 8:23 AM, jennifer_james███████████████ wrote:

> Actually - no - the court in PA emailed yesterday inquiring as to why
> you haven't been paying, either, and I'm afraid any delay in clearing
> this up could result in your being summoned back there.  Can you
> email me everything you have ready and I can review ahead of our
> meeting?  I could see you as late as 4pm today.
>
> Please let me know if that helps.

Jennifer J. James
U.S. Probation Officer Specialist

Sent from my iPhone

On Feb 17, 2016, at 3:42 PM, Sarah Kirsch ▮▮▮▮▮▮▮▮▮▮▮▮
wrote:

> Hi Jennifer,
>
> My boss moved some meetings I cannot get out of tomorrow. Is
> there any way we can meet next week instead? I've got all of
> the paperwork ready to go.
>
> Thanks,
>
>
>
> Sarah
>
> ▮▮▮▮▮▮▮▮
> Sarah on LinkedIn
> Book Time on my Calendar
>
>
> Privileged and/or confidential:
>
> This e-mail (including any attachments) is intended only for
> the use of the individual or entity named above and may contain
> privileged or confidential information. If you are not the
> intended recipient, or the employee or agent responsible to
> deliver it to the intended recipient, you are notified that any
> review, dissemination, distribution or copying of this e-mail
> is prohibited.
>
>
>
> On Fri, Feb 12, 2016 at 3:51 PM, <
> jennifer_james▮▮▮▮▮▮▮▮▮▮▮> wrote:
>
>> Hi Jocelyn -
>>
>> Prior to our meeting next week (Thursday, February 18, 2016
>> at 2:00 p.m.),
>> please fill out the following financial forms, paying special
>> attention to
>> instructions regarding supporting documentation (pay stubs,
>> bank
>> statements, credit card statements, etc.) that you will need
>> to bring with
>> you.
>>
>> (See attached file: Kirsch consent to run credit
>> check.pdf)(See attached
>> file: Kirsch Declaration of Net Worth & Cash Flow
>> Statements.pdf)(See
>> attached file: Kirsch Monthly Cash Flow Statement.pdf)(See
>> attached file:
>> Kirsch Net Worth Statement.pdf)
>>
>> I have also included a copy of your payment record (OPERA),
>> which reflects

your last payment to the ED/PA Clerk's office in the amount
of $500 on
4/21/15. Part of why I am asking you to fill out the
attached paperwork,
is to determine whether or not you can pay more than
$250/month toward your
restitution balance.  If it is determined that in fact you
have not made
any payments towards restitution since 4/21/15 - you will owe
(at minimum)
$2,500.

(See attached file: Payment history report.pdf)(See attached
file:
Restitution order.pdf)

I look forward to meeting with you on Thursday.

Thank you.


Jennifer J. James
U.S. Probation Officer Specialist, ND/CA
450 Golden Gate Avenue, Suite 17-6884
San Francisco, California 94523



# EXHIBIT C



USAA
FEDERAL
SAVINGS
BANK

JOCELYN S KIRSCH



3
10

| ACCOUNT NUMBER | | ACCOUNT TYPE | | STATEMENT PERIOD |
|---|---|---|---|---|
| ████0341-8 | | USAA SECURE CHECKING | | 05/11/15 - 06/09/15 |

| BALANCE LAST STATEMENT | NO OF DEBITS PAID | TOTAL AMOUNT OF DEBITS PAID | NO. OF DEP | TOTAL AMOUNT OF DEPOSITS MADE | SERVICE CHARGES | BALANCE THIS STATEMENT |
|---|---|---|---|---|---|---|
| 5,277.01 | 75 | 11,116.46 | 8 | 7,610.59 | .00 | 1,771.14 |

Please examine immediately and report if incorrect. If no report is received within 60 days, the account will be considered correct.

| | TOTAL NONSUFFICIENT FUNDS (NSF) FEES | TOTAL OVERDRAFT (OD) FEES |
|---|---|---|
| THIS STATEMENT | 29.00 | 0.00 |
| THIS YEAR'S STATEMENTS | 87.00 | 0.00 |

Note: Fee reversals/refunds made by USAA will not reduce the totals on this chart.

DEPOSIT@MOBILE WAS DESIGNED FOR USAA MEMBERS ON THE GO.
NEED TO MAKE A DEPOSIT, CONSIDER DEPOSIT@MOBILE. FOR DETAILS
AND ELIGIBILITY VISIT USAA.COM (KEYWORD: DEPOSIT@MOBILE).

```
   DEPOSITS AND OTHER CREDITS
DATE.........AMOUNT.TRANSACTION DESCRIPTION
05/15     3,448.53 ACH CREDIT            051515
                   ALIPHCOM INC    DIRECT DEP **********8A6A
05/19        14.99 DEBIT CARD REFUND     051815
                   ADOBE *ACROBAT        800-833-6687 CA
05/19        14.99 DEBIT CARD REFUND     051815
                   ADOBE *ACROBAT        800-833-6687 CA
05/29     3,447.30 ACH CREDIT            052915
                   ALIPHCOM INC    DIRECT DEP **********7A6A
06/04        29.00 NSF FEE REFUND
06/05       650.00 WIRE IN
                   001150605124233
06/09         5.75 ATM SURCHARGE REBATE
06/09         0.03 INTEREST PAID

   AUTO CHECKS
DATE..CHECK NO..........AMOUNT  DATE..CHECK NO..........AMOUNT
05/06     1027          500.00  06/08     1030*     2,800.00
06/06     1028          500.00

   OTHER DEBITS
DATE.........AMOUNT.TRANSACTION DESCRIPTION
05/13         5.23 DEBIT CARD PURCHASE   051215
                   AQUS CAFE             PETALUMA    CA
05/13         7.00 DEBIT CARD PURCHASE   051215
                   PRESIDIO-CALE P       SAN FRANCISCOCA
```



FDIC
INSURED

93526-0814_05



USAA
FEDERAL
SAVINGS
BANK

PAGE    1

JOCELYN S KIRSCH



3
10

| ACCOUNT NUMBER | ACCOUNT TYPE | STATEMENT PERIOD |
|---|---|---|
| -0341-8 | USAA SECURE CHECKING | 06/09/15 - 07/09/15 |

| BALANCE LAST STATEMENT | NO OF DEBITS PAID | TOTAL AMOUNT OF DEBITS PAID | NO. OF DEP | TOTAL AMOUNT OF DEPOSITS MADE | SERVICE CHARGES | BALANCE THIS STATEMENT |
|---|---|---|---|---|---|---|
| 1,771.14 | 62 | 7,412.53 | 4 | 6,897.17 | .00 | 1,255.78 |

Please examine immediately and report if incorrect. If no report is received within 60 days, the account will be considered correct.

| | TOTAL NONSUFFICIENT FUNDS (NSF) FEES | TOTAL OVERDRAFT (OD) FEES |
|---|---|---|
| THIS STATEMENT | 0.00 | 0.00 |
| THIS YEAR'S STATEMENTS | 87.00 | 0.00 |

Note: Fee reversals/refunds made by USAA will not reduce the totals on this chart.

DEPOSIT@MOBILE WAS DESIGNED FOR USAA MEMBERS ON THE GO.
NEED TO MAKE A DEPOSIT, CONSIDER DEPOSIT@MOBILE. FOR DETAILS
AND ELIGIBILITY VISIT USAA.COM (KEYWORD: DEPOSIT@MOBILE).


    DEPOSITS AND OTHER CREDITS
DATE.........AMOUNT.TRANSACTION DESCRIPTION
06/15    3,447.32 ACH CREDIT           061515
                  ALIPHCOM INC    DIRECT DEP **********2A6A
06/30    3,447.32 ACH CREDIT           063015
                  ALIPHCOM INC    DIRECT DEP **********4A6A
07/09        2.50 ATM SURCHARGE REBATE
07/09        0.03 INTEREST PAID

    AUTO CHECKS
DATE..CHECK NO..........AMOUNT   DATE..CHECK NO..........AMOUNT
06/22    1029           800.00   07/07    1153*      2,800.00
07/06    1151*          500.00

    OTHER DEBITS
DATE.........AMOUNT.TRANSACTION DESCRIPTION
06/10        0.99 DEBIT CARD PURCHASE   061015
                  APL* ITUNES.COM      866-712-7753 CA
06/10        5.98 DEBIT CARD PURCHASE   061015
                  APL* ITUNES.COM      866-712-7753 CA
06/12       10.77 DEBIT CARD PURCHASE   061115
                  DOS PINAS            SAN FRANCISCOCA
06/15        9.99 DEBIT CARD PURCHASE   061315
                  ADY*SPOTIFY USA      646-8375380  NY
06/15       10.95 DEBIT CARD PURCHASE   061415
                  REJUVENATION IN      BERKELEY    CA
06/15       12.96 DEBIT CARD PURCHASE   061315
                  APL* ITUNES.COM      866-712-7753 CA

FDIC
INSURED

93526-0814_05



USAA
FEDERAL
SAVINGS
BANK

PAGE   1

JOCELYN S KIRSCH

1
10

| ACCOUNT NUMBER | ACCOUNT TYPE | STATEMENT PERIOD |
|---|---|---|
| 0341-8 | USAA SECURE CHECKING | 07/09/15 - 08/10/15 |

| BALANCE LAST STATEMENT | NO OF DEBITS PAID | TOTAL AMOUNT OF DEBITS PAID | NO. OF DEP | TOTAL AMOUNT OF DEPOSITS MADE | SERVICE CHARGES | BALANCE THIS STATEMENT |
|---|---|---|---|---|---|---|
| 1,255.78 | 83 | 4,987.08 | 5 | 7,864.63 | .00 | 4,133.33 |

Please examine immediately and report if incorrect. If no report is received within 60 days, the account will be considered correct.

| | TOTAL NONSUFFICIENT FUNDS (NSF) FEES | TOTAL OVERDRAFT (OD) FEES |
|---|---|---|
| THIS STATEMENT | 0.00 | 0.00 |
| THIS YEAR'S STATEMENTS | 87.00 | 0.00 |

Note: Fee reversals/refunds made by USAA will not reduce the totals on this chart.

DEPOSIT@MOBILE WAS DESIGNED FOR USAA MEMBERS ON THE GO.
NEED TO MAKE A DEPOSIT, CONSIDER DEPOSIT@MOBILE. FOR DETAILS
AND ELIGIBILITY VISIT USAA.COM (KEYWORD: DEPOSIT@MOBILE).

```
    DEPOSITS AND OTHER CREDITS
DATE.........AMOUNT.TRANSACTION DESCRIPTION
07/15     3,498.92 ACH CREDIT            071515
                   ALIPHCOM INC    DIRECT DEP ***********0A6A
07/21        20.00 OFFER REBATE
     BCBG # 0703
07/28       800.00 DEPOSIT @ MOBILE
07/31     3,545.68 ACH CREDIT            073115
                   ALIPHCOM INC    DIRECT DEP ***********9A6A
08/10         0.03 INTEREST PAID

AUTO CHECKS
DATE..CHECK NO..........AMOUNT   DATE..CHECK NO..........AMOUNT
07/06     1152          500.00

    OTHER DEBITS
DATE.........AMOUNT.TRANSACTION DESCRIPTION
07/10         0.99 DEBIT CARD PURCHASE   071015
                   APL* ITUNES.COM       866-712-7753 CA
07/10         9.39 DEBIT CARD PURCHASE   070915
                   LYFT   *RIDE WE        8552800278   CA
07/13         4.25 DEBIT CARD PURCHASE   071115
                   SQ *RITUAL COFF        San FranciscoCA
07/13        19.59 DEBIT CARD PURCHASE   071215
                   CAFFE FIORE           SAN FRANCISCOCA
07/13        21.76 POS DEBIT             071215
                   J. CREW RETAIL #557   CORTE MADERA CA
```



USAA
FEDERAL
SAVINGS
BANK

PAGE    1

JOCELYN S KIRSCH



3
10

| ACCOUNT NUMBER | ACCOUNT TYPE | STATEMENT PERIOD |
|---|---|---|
| ▮▮▮-0341-8 | USAA SECURE CHECKING | 08/10/15 - 09/10/15 |

| BALANCE LAST STATEMENT | NO OF DEBITS PAID | TOTAL AMOUNT OF DEBITS PAID | NO. OF DEP | TOTAL AMOUNT OF DEPOSITS MADE | SERVICE CHARGES | BALANCE THIS STATEMENT |
|---|---|---|---|---|---|---|
| 4,133.33 | 95 | 10,802.05 | 9 | 8,715.20 | .00 | 2,046.48 |

Please examine immediately and report if incorrect. If no report is received within 60 days, the account will be considered correct.

| | TOTAL NONSUFFICIENT FUNDS (NSF) FEES | TOTAL OVERDRAFT (OD) FEES |
|---|---|---|
| THIS STATEMENT | 0.00 | 0.00 |
| THIS YEAR'S STATEMENTS | 87.00 | 0.00 |

Note: Fee reversals/refunds made by USAA will not reduce the totals on this chart.

DEPOSIT@MOBILE WAS DESIGNED FOR USAA MEMBERS ON THE GO.
NEED TO MAKE A DEPOSIT, CONSIDER DEPOSIT@MOBILE. FOR DETAILS
AND ELIGIBILITY VISIT USAA.COM (KEYWORD: DEPOSIT@MOBILE).

```
     DEPOSITS AND OTHER CREDITS
DATE.........AMOUNT.TRANSACTION DESCRIPTION
08/13          0.05 ACH CREDIT          081415
                    PAYPAL           VERIFYBANK ***********N44J
08/13          0.14 ACH CREDIT          081415
                    PAYPAL           VERIFYBANK **********N44J
08/14      3,522.32 ACH CREDIT          081415
                    ALIPHCOM INC    DIRECT DEP ***********6A6A
08/18         20.35 DEBIT CARD REFUND   081815
                    Amazon.com          AMZN.COM/BILLWA
08/31      3,522.31 ACH CREDIT          083115
                    ALIPHCOM INC    DIRECT DEP ***********5A6A
08/31        147.00 DEBIT CARD REFUND   082815
                    BT TASKRABBIT,       8886618105   CA
09/02      1,500.00 ACH CREDIT          090215
                    SFFCU           A2A ORIG   **********8241
09/10          3.00 ATM SURCHARGE REBATE
09/10          0.03 INTEREST PAID
```

```
     AUTO CHECKS
DATE..CHECK NO..........AMOUNT   DATE..CHECK NO..........AMOUNT
08/06  1155           500.00     08/25   1163*         600.00
08/21  1159*        3,900.00
```

```
     OTHER DEBITS
DATE.........AMOUNT.TRANSACTION DESCRIPTION
08/11          1.25 DEBIT CARD PURCHASE   081015
                    CCSF MTA IPS PR       SAN FRANCISCOCA
```



FDIC
INSURED

93526-0814_05



USAA
FEDERAL
SAVINGS
BANK

PAGE    1

JOCELYN S KIRSCH

0
10

| ACCOUNT NUMBER | ACCOUNT TYPE | STATEMENT PERIOD |
|---|---|---|
| ▮▮▮▮-0341-8 | USAA SECURE CHECKING | 09/10/15 - 10/09/15 |

| BALANCE LAST STATEMENT | NO OF DEBITS PAID | TOTAL AMOUNT OF DEBITS PAID | NO. OF DEP | TOTAL AMOUNT OF DEPOSITS MADE | SERVICE CHARGES | BALANCE THIS STATEMENT |
|---|---|---|---|---|---|---|
| 2,046.48 | 49 | 6,109.49 | 3 | 7,044.65 | .00 | 2,981.64 |

Please examine immediately and report if incorrect. If no report is received within 60 days, the account will be considered correct.

| | TOTAL NONSUFFICIENT FUNDS (NSF) FEES | TOTAL OVERDRAFT (OD) FEES |
|---|---|---|
| THIS STATEMENT | 0.00 | 0.00 |
| THIS YEAR'S STATEMENTS | 87.00 | 0.00 |

Note: Fee reversals/refunds made by USAA will not reduce the totals on this chart.

DEPOSIT@MOBILE WAS DESIGNED FOR USAA MEMBERS ON THE GO.
NEED TO MAKE A DEPOSIT, CONSIDER DEPOSIT@MOBILE. FOR DETAILS
AND ELIGIBILITY VISIT USAA.COM (KEYWORD: DEPOSIT@MOBILE).

```
   DEPOSITS AND OTHER CREDITS
DATE.........AMOUNT.TRANSACTION DESCRIPTION
09/15    3,522.32 ACH CREDIT           091515
                  ALIPHCOM INC     DIRECT DEP **********8A6A
09/30    3,522.30 ACH CREDIT           093015
                  ALIPHCOM INC     DIRECT DEP **********3A6A
10/09        0.03 INTEREST PAID

AUTO CHECKS
DATE..CHECK NO..........AMOUNT   DATE..CHECK NO..........AMOUNT
09/06    1054         500.00

   OTHER DEBITS
DATE.........AMOUNT.TRANSACTION DESCRIPTION
09/11        0.99 DEBIT CARD PURCHASE    091115
                  APL* ITUNES.COM      866-712-7753 CA
09/14        3.73 POS DEBIT             091315
                  SAFEWAY  STORE2020 MARKETSAN FRANCISCOCA
09/14        6.27 DEBIT CARD PURCHASE    091215
                  CCSF MTA IPS PR        SAN FRANCISCOCA
09/14        6.27 DEBIT CARD PURCHASE    091215
                  PAYBYPHONE SANF        NEW YORK    NY
09/14        6.55 DEBIT CARD PURCHASE    091315
                  LYFT   *RIDE SA      8552800278   CA
09/14       10.50 DEBIT CARD PURCHASE    091315
                  SFMTA 5TH & MIS        SAN FRANCISCOCA
09/14       12.00 DEBIT CARD PURCHASE    091115
                  53 CITY PARK -         SAN FRANCISCOCA
```

FDIC
INSURED

93526-0814_05



USAA
FEDERAL
SAVINGS
USAA® BANK

PAGE    1

JOCELYN S KIRSCH

0
10

| ACCOUNT NUMBER | ACCOUNT TYPE | STATEMENT PERIOD |
|---|---|---|
| ███████0341-8 | USAA SECURE CHECKING | 10/09/15 - 11/09/15 |

| BALANCE LAST STATEMENT | NO OF DEBITS PAID | TOTAL AMOUNT OF DEBITS PAID | NO. OF DEP | TOTAL AMOUNT OF DEPOSITS MADE | SERVICE CHARGES | BALANCE THIS STATEMENT |
|---|---|---|---|---|---|---|
| 2,981.64 | 76 | 9,040.40 | 9 | 11,124.92 | .00 | 5,066.16 |

Please examine immediately and report if incorrect. If no report is received within 60 days, the account will be considered correct.

| | TOTAL NONSUFFICIENT FUNDS (NSF) FEES | TOTAL OVERDRAFT (OD) FEES |
|---|---|---|
| THIS STATEMENT | 0.00 | 0.00 |
| THIS YEAR'S STATEMENTS | 87.00 | 0.00 |

Note: Fee reversals/refunds made by USAA will not reduce the totals on this chart.

DEPOSIT@MOBILE WAS DESIGNED FOR USAA MEMBERS ON THE GO.
NEED TO MAKE A DEPOSIT, CONSIDER DEPOSIT@MOBILE. FOR DETAILS
AND ELIGIBILITY VISIT USAA.COM (KEYWORD: DEPOSIT@MOBILE).


    DEPOSITS AND OTHER CREDITS
DATE.........AMOUNT.TRANSACTION DESCRIPTION
10/13       100.00 ACH CREDIT          101315
             VENMO-0           CASHOUT   **********2856
10/14       100.00 ACH CREDIT          101415
             VENMO-0           CASHOUT   **********4938
10/15     3,522.32 ACH CREDIT          101515
             ALIPHCOM INC      DIRECT DEP **********2A6A
10/16     2,944.24 DEPOSIT @ MOBILE
10/30     3,522.31 ACH CREDIT          103015
             ALIPHCOM INC      DIRECT DEP **********1A6A
11/09        85.00 ACH CREDIT          110915
             VENMO-0           CASHOUT   **********3796
11/09       845.00 DEPOSIT @ MOBILE
11/09         6.00 ATM SURCHARGE REBATE
11/09         0.05 INTEREST PAID


    OTHER DEBITS
DATE.........AMOUNT.TRANSACTION DESCRIPTION
10/06       500.00 E-CHECK SURCHARGE    101015
             HOLD FOR DEPOSIT    866-712-7753 CA
10/13         6.00 DEBIT CARD PURCHASE  101015
             LYFT   *RIDE FR    8552800278   CA
10/13         6.00 DEBIT CARD PURCHASE  101215
             SQ *GRAND COFFE     San FranciscoCA
10/13         6.25 DEBIT CARD PURCHASE  101015
             SQ *RITUAL COFF     San FranciscoCA

FDIC
INSURED

93526-0814_05



USAA
FEDERAL
SAVINGS
BANK

JOCELYN S KIRSCH


0
10

| ACCOUNT NUMBER | ACCOUNT TYPE | STATEMENT PERIOD |
|---|---|---|
| ____0341-8 | USAA SECURE CHECKING | 11/09/15 - 12/09/15 |

| BALANCE LAST STATEMENT | NO OF DEBITS PAID | TOTAL AMOUNT OF DEBITS PAID | NO. OF DEP | TOTAL AMOUNT OF DEPOSITS MADE | SERVICE CHARGES | BALANCE THIS STATEMENT |
|---|---|---|---|---|---|---|
| 5,066.16 | 57 | 3,577.19 | 3 | 5,581.19 | .00 | 7,070.16 |

Please examine immediately and report if incorrect. If no report is received within 60 days, the account will be considered correct.

| | TOTAL NONSUFFICIENT FUNDS (NSF) FEES | TOTAL OVERDRAFT (OD) FEES |
|---|---|---|
| THIS STATEMENT | 0.00 | 0.00 |
| THIS YEAR'S STATEMENTS | 87.00 | 0.00 |

Note: Fee reversals/refunds made by USAA will not reduce the totals on this chart.

DEPOSIT@MOBILE WAS DESIGNED FOR USAA MEMBERS ON THE GO.
NEED TO MAKE A DEPOSIT, CONSIDER DEPOSIT@MOBILE. FOR DETAILS
AND ELIGIBILITY VISIT USAA.COM (KEYWORD: DEPOSIT@MOBILE).


   DEPOSITS AND OTHER CREDITS
DATE.........AMOUNT.TRANSACTION DESCRIPTION
11/13      3,540.92 ACH CREDIT            111315
                    ALIPHCOM INC    DIRECT DEP **********5A6A
11/20      2,040.21 DEPOSIT @ MOBILE
12/09          0.06 INTEREST PAID

AUTO CHECKS
DATE..CHECK NO..........AMOUNT   DATE..CHECK NO..........AMOUNT
11/06   1164          500.00

   OTHER DEBITS
DATE.........AMOUNT.TRANSACTION DESCRIPTION
11/10          0.99 DEBIT CARD PURCHASE   111015
                    APL* ITUNES.COM       866-712-7753 CA
11/10         16.98 DEBIT CARD PURCHASE   111015
                    APL* ITUNES.COM       866-712-7753 CA
11/10         27.24 POS DEBIT             111015
                    WHOLEFDS PTH 1450 RHODE ISAN FRANCISCOCA
11/12          3.45 DEBIT CARD PURCHASE   111115
                    STARBUCKS #1123          San FranciscoCA
11/12         10.00 DEBIT CARD PURCHASE   111115
                    STARBUCKS CARD        300-782-7282 WA
11/12         29.99 DEBIT CARD PURCHASE   111115
                    LINKEDIN-229*81       LINKEDIN.COM CA
11/13          4.35 DEBIT CARD PURCHASE   111215
                    WHOLEFDS PTH #1          SAN FRANCISCOCA

FDIC
INSURED

93526-0814_05



USAA
FEDERAL
SAVINGS
BANK

PAGE    2

JOCELYN S KIRSCH



0
10

| ACCOUNT NUMBER | ACCOUNT TYPE | STATEMENT PERIOD |
|---|---|---|
| 0341-8 | USAA SECURE CHECKING | 12/09/15 - 01/08/16 |

OTHER DEBITS

DATE.........AMOUNT.TRANSACTION DESCRIPTION

```
                                      120915
12/06        500.00  E-CHECK SURCHARGE
                      HOLD FOR DEPOSIT    01111111111  CA
                                      121015
                      WALGREENS2690 MISSION ST SAN FRANCISCOCA
12/14         10.00  DEBIT CARD PURCHASE  121315
                      STARBUCKS CARD       800-782-7282 WA
12/15          9.99  DEBIT CARD PURCHASE  121315
                      ADY*SPOTIFY 165      646-8375380  NY
12/15        100.00  DEBIT CARD PURCHASE  121415
                      WEBPASS INC          180-09327277 CA
12/15      3,900.00  USAA FUNDS TRANSFER DB
12/17         46.53  POS DEBIT            121615
                      WHOLEFDS PTH 1450 RHODE ISAN FRANCISCOCA
12/18         21.95  DEBIT CARD PURCHASE  121715
                      EXPERIAN    *CR      866-5827269  CA
12/18         25.00  DEBIT CARD PURCHASE  121615
                      FASTRAK CSC          04154868655  CA
12/21          7.99  DEBIT CARD PURCHASE  122115
                      NETFLIX.COM          NETFLIX.COM  CA
12/21         10.00  DEBIT CARD PURCHASE  121915
                      STARBUCKS CARD       800-782-7282 WA
12/21         12.23  DEBIT CARD PURCHASE  121815
                      LYFT    *RIDE FR     8552800278   CA
12/21         15.80  DEBIT CARD PURCHASE  121815
                      LYFT    *RIDE FR     8552800278   CA
12/21         27.29  DEBIT CARD PURCHASE  121915
                      HOUSE 530            SAN FRANCISCOCA
12/21         32.03  DEBIT CARD PURCHASE  121915
                      LYFT    *RIDE FR     8552800278   CA
12/21        152.64  DEBIT CARD PURCHASE  122015
                      VZWRLSS*APOCC V      800-922-0204 NJ
12/22         91.70  DEBIT CARD PURCHASE  122215
                      GEICO   *AUTO        800-841-3000 DC
12/22         15.00  ACH DEBIT            122215
                      CAPITAL ONE   CRCARDPMT  ***********4774
12/23          4.52  DEBIT CARD PURCHASE  122215
                      CCSF MTA IPS PR      SAN FRANCISCOCA
```

FDIC
INSURED

105846-0814_06



USAA
FEDERAL
SAVINGS
BANK

PAGE    2

JOCELYN S KIRSCH



0
10

| ACCOUNT NUMBER | ACCOUNT TYPE | STATEMENT PERIOD |
|---|---|---|
| -0341-8 | USAA SECURE CHECKING | 01/08/16 - 02/09/16 |

OTHER DEBITS

DATE.........AMOUNT.TRANSACTION DESCRIPTION
```
01/01        500.00 E-CHECK SURCHARGE   011016
                    HOLD FOR DEPOSIT
01/12      3,900.00 USAA FUNDS TRANSFER DB
01/13         11.27 DEBIT CARD PURCHASE   011216
                    LYFT   *RIDE TU      8552800278   CA
01/13         29.33 DEBIT CARD PURCHASE   011216
                    ARCHIVE BAR & K       SAN FRANCISCOCA
01/14         11.30 DEBIT CARD PURCHASE   011316
                    LYFT   *RIDE TU      8552800278   CA
01/15          8.00 DEBIT CARD PURCHASE   011416
                    LYFT   *RIDE TH      8552800278   CA
01/15          9.99 DEBIT CARD PURCHASE   011316
                    ADY*SPOTIFY 188       646-8375380  NY
01/15         11.25 DEBIT CARD PURCHASE   011416
                    LYFT   *RIDE TH      8552800278   CA
01/15         12.47 POS DEBIT             011416
                    CAMERE SUPER MARKET1001 VSAN FRANCISCOCA
01/15         22.85 ATM DB NONLOCAL       011516
                    3248 22ND STREET      SAN FRANCISCOCA
01/19         15.00 DEBIT CARD PURCHASE   011716
                    ZEKI'S BAR            SAN FRANCISCOCA
01/19         21.95 DEBIT CARD PURCHASE   011716
                    EXPERIAN   *CR        866-5827269  CA
01/19         34.28 DEBIT CARD PURCHASE   011516
                    LOLINDA               SAN FRANCISCOCA
01/19         34.71 DEBIT CARD PURCHASE   011616
                    EAT24.COM             SAN FRANCISCOCA
01/19         38.00 DEBIT CARD PURCHASE   011716
                    BLACKBIRD BAR         SAN FRANCISCOCA
01/19        325.97 POS DEBIT             011816
                    WALGREENS2690 MISSION ST SAN FRANCISCOCA
01/20        137.13 DEBIT CARD PURCHASE   012016
                    VZWRLSS*APOCC V       800-922-0204 NJ
01/21          7.99 DEBIT CARD PURCHASE   012116
                    NETFLIX.COM           NETFLIX.COM  CA
01/22         15.00 ACH DEBIT             012216
                    CAPITAL ONE     CRCARDPMT **********6110
```

FDIC
INSURED

105846-0814_06



USAA
FEDERAL
SAVINGS
BANK

PAGE   1

JOCELYN S KIRSCH



0
10

| ACCOUNT NUMBER | ACCOUNT TYPE | STATEMENT PERIOD |
|---|---|---|
| ▬0341-8 | USAA SECURE CHECKING | 02/09/16 - 03/09/16 |

| BALANCE LAST STATEMENT | NO OF DEBITS PAID | TOTAL AMOUNT OF DEBITS PAID | NO. OF DEP | TOTAL AMOUNT OF DEPOSITS MADE | SERVICE CHARGES | BALANCE THIS STATEMENT |
|---|---|---|---|---|---|---|
| 1,561.59 | 38 | 4,140.35 | 7 | 4,303.86 | .00 | 1,725.10 |

Please examine immediately and report if incorrect. If no report is received within 60 days, the account will be considered correct

| | TOTAL NONSUFFICIENT FUNDS (NSF) FEES | TOTAL OVERDRAFT (OD) FEES |
|---|---|---|
| THIS STATEMENT | 29.00 | 0.00 |
| THIS YEAR'S STATEMENTS | 29.00 | 0.00 |

Note: Fee reversals/refunds made by USAA will not reduce the totals on this chart.

EFFECTIVE MARCH 1, 2016, TRANSACTIONS AT ATMS LOCATED
OUTSIDE OF THE UNITED STATES MAY NOT BE ELIGIBLE FOR ATM
USAGE FEE REFUNDS. SEE FEE SCHEDULE ON USAA.COM

```
    DEPOSITS AND OTHER CREDITS
DATE.........AMOUNT.TRANSACTION DESCRIPTION
02/17         94.00 DEBIT CARD REFUND      122815
                                           775-8490704
02/23        200.00 USAA FUNDS TRANSFER CR
02/25      2,500.00 ACH CREDIT             022516
                    SFFCU           A2A ORIG   **********0495
03/02          2.00 DEBIT CARD REFUND      022816
                    EAT24.COM              SAN FRANCISCOCA
03/07      1,500.00 DEPOSIT @ MOBILE
03/09          7.85 ATM SURCHARGE REBATE
03/09          0.01 INTEREST PAID

    OTHER DEBITS
DATE.........AMOUNT.TRANSACTION DESCRIPTION
02/01        500.00 E-CHECK SURGCHARGE     021016
                    HOLD FOR DEPOSIT       866-712-7753 CA
02/11         11.68 DEBIT CARD PURCHASE    021016
                    LYFT   *RIDE WE        8552800278   CA
02/11         22.50 ATM DB NONLOCAL        021116
                    PAI ISO                SAN FRANCISCOCA
02/12         13.42 DEBIT CARD PURCHASE    021016
                    SAMOVAR TEA LOU        SAN FRANCISCOCA
02/16          4.75 DEBIT CARD PURCHASE    021216
                    CCSF MTA IPS PR        SAN FRANCISCOCA
```

FDIC
INSURED

93526-0814_05



USAA
FEDERAL
SAVINGS
BANK

PAGE    3

JOCELYN S KIRSCH



0
10

| ACCOUNT NUMBER | ACCOUNT TYPE | STATEMENT PERIOD |
|---|---|---|
| ███341-8 | USAA SECURE CHECKING | 02/09/16 - 03/09/16 |

        OTHER DEBITS
    DATE.........AMOUNT.TRANSACTION DESCRIPTION
    02/29      2,500.00 ACH DEBIT            022916          1006
                        E DISTRICT PA   RETRY PYMT 1006
    03/01          6.50 DEBIT CARD PURCHASE  022916
                        SQ *SIGHTGLASS       SAN FRANCISCOCA
    03/01          7.62 DEBIT CARD PURCHASE  022916
                        LYFT    *RIDE MO     8552800278   CA
    03/01         10.00 DEBIT CARD PURCHASE  022916
                        SQ *RITUAL COFF      SAN FRANCISCOCA
    03/01         42.50 ATM DB NONLOCAL      022916
                        999 VALENCIA ST.     SAN FRANCISCOCA
    03/01        271.54 ACH DEBIT            030116
                        CAPITAL ONE AUTO DIRECTPAY  **********8508
    03/02          2.00 DEBIT CARD PURCHASE  022816
                        EAT24.COM            SAN FRANCISCOCA
    03/02          2.99 DEBIT CARD PURCHASE  030116
                        LYFT    *RIDE MO     8552800278   CA
    03/02         28.38 DEBIT CARD PURCHASE  022816
                        EAT24.COM            SAN FRANCISCOCA
    03/02        155.00 DEBIT CARD PURCHASE  030116
                        HEIRLOOM STORAG      04158998679  CA
    03/03         10.00 DEBIT CARD PURCHASE  030316
                        STARBUCKS CARD       800-782-7282 WA
    03/04         12.92 DEBIT CARD PURCHASE  030216
                        LYFT    *RIDE WE     8552800278   CA
    03/07         15.73 DEBIT CARD PURCHASE  030516
                        LYFT    *RIDE FR     8552800278   CA
    03/08         29.69 DEBIT CARD PURCHASE  030616
                        EAT24.COM            SAN FRANCISCOCA

FDIC
INSURED



USAA
FEDERAL
SAVINGS
BANK

PAGE    1

JOCELYN S KIRSCH

0
10

| ACCOUNT NUMBER | ACCOUNT TYPE | STATEMENT PERIOD |
|---|---|---|
| ████-0341-8 | USAA SECURE CHECKING | 03/09/16 - 04/11/16 |

| BALANCE LAST STATEMENT | NO OF DEBITS PAID | TOTAL AMOUNT OF DEBITS PAID | NO. OF DEP | TOTAL AMOUNT OF DEPOSITS MADE | SERVICE CHARGES | BALANCE THIS STATEMENT |
|---|---|---|---|---|---|---|
| 1,725.10 | 63 | 5,706.52 | 4 | 4,002.86 | .00 | 21.44 |

Please examine immediately and report if incorrect. If no report is received within 60 days, the account will be considered correct

| | TOTAL NONSUFFICIENT FUNDS (NSF) FEES | TOTAL OVERDRAFT (OD) FEES |
|---|---|---|
| THIS STATEMENT | 0.00 | 0.00 |
| THIS YEAR'S STATEMENTS | 29.00 | 0.00 |

Note: Fee reversals/refunds made by USAA will not reduce the totals on this chart.

EFFECTIVE MARCH 1, 2016, TRANSACTIONS AT ATMS LOCATED
OUTSIDE OF THE UNITED STATES MAY NOT BE ELIGIBLE FOR ATM
USAGE FEE REFUNDS. SEE FEE SCHEDULE ON USAA.COM

    DEPOSITS AND OTHER CREDITS
DATE.........AMOUNT.TRANSACTION DESCRIPTION
03/17    1,500.00 DEPOSIT @ MOBILE
03/17    2,500.00 DEPOSIT @ MOBILE
04/11        2.85 ATM SURCHARGE REBATE
04/11        0.01 INTEREST PAID

    OTHER DEBITS
DATE.........AMOUNT.TRANSACTION DESCRIPTION
03/01      500.00 E-CHECK SURCHARGE       031016
                  HOLD FOR DEPOSIT        866-712-7753 CA
03/10       14.99 DEBIT CARD PURCHASE     031016
                  APL* ITUNES.COM         866-712-7753 CA
03/11       32.00 DEBIT CARD PURCHASE     031016
                  IMPARK00370358A         SAN FRANCISCOCA
03/14        6.00 POS DEBIT               031316
                  BART-EMBARDERO  QPS298SAN FRANCISCOCA
03/14        9.05 DEBIT CARD PURCHASE     031216
                  LYFT   *RIDE SA         8552800278   CA
03/15        9.99 DEBIT CARD PURCHASE     031316
                  ADY*SPOTIFY 240         646-8375380  NY
03/17        4.50 DEBIT CARD PURCHASE     031616
                  CCSF MTA IPS PR         SAN FRANCISCOCA
03/17       12.95 DEBIT CARD PURCHASE     031616
                  LYFT   *RIDE TU         8552800278   CA
03/17       59.12 DEBIT CARD PURCHASE     031516
                  LITTLE STAR VAL         SAN FRANCISCOCA
03/17    3,900.00 USAA FUNDS TRANSFER DB

FDIC
INSURED

93526-0814_05



USAA
FEDERAL
SAVINGS
BANK

JOCELYN S KIRSCH



0
10

| ACCOUNT NUMBER | ACCOUNT TYPE | STATEMENT PERIOD |
|---|---|---|
| ▇▇▇-0341-8 | USAA SECURE CHECKING | 03/09/16 - 04/11/16 |

OTHER DEBITS

```
DATE.........AMOUNT.TRANSACTION DESCRIPTION
03/28      14.00 DEBIT CARD PURCHASE   032616
                 ACE HOTEL RESTA       PALM SPRINGS CA
03/28      50.17 DEBIT CARD PURCHASE   032616
                 ACE HOTEL RESTA       PALM SPRINGS CA
03/28      95.00 DEBIT CARD PURCHASE   032416
                 ACE HOTEL AND S       PALM SPRINGS CA
03/28     110.74 DEBIT CARD PURCHASE   032716
                 GJELINA               VENICE      CA
03/29       2.95 DEBIT CARD PURCHASE   032816
                 GOGOAIR.COM           877-350-0038 IL
03/29       3.25 DEBIT CARD PURCHASE   032816
                 VIRGIN AMERICA        BURLINGAME  CA
03/29       6.00 DEBIT CARD PURCHASE   032816
                 G2 GALLERY            VENICE      CA
03/29       7.65 DEBIT CARD PURCHASE   032716
                 DANNY'S VENICE        VENICE      CA
03/29      20.00 POS DEBIT             032816
                 BART SFIASFO INTL TERM LESAN FRANCISCOCA
03/29      37.27 DEBIT CARD PURCHASE   032816
                 ENTERPRISE RENT       PALM SPRINGS CA
03/30      71.07 DEBIT CARD PURCHASE   032916
                 PERBACCO              SAN FRANCISCOCA
03/30     271.54 ACH DEBIT             033016
                 .500.00 E-CHECK SURCHARGE
04/01            HOLD FOR DEPOSIT 10.04
                                       033116
04/01      41.39 DEBIT CARD PURCHASE   033016
                 EAT24.COM             SAN FRANCISCOCA
04/04       5.01 DEBIT CARD PURCHASE   040216
                 LYFT   *RIDE FR       8552800278  CA
04/04       9.00 POS DEBIT             040416
                 BART-24TH ST     QPS280SAN FRANCISCOCA
04/04     155.00 DEBIT CARD PURCHASE   040116
                 HEIRLOOM STORAG       04158998679 CA
04/05       4.40 DEBIT CARD PURCHASE   040416
                 PEET'S #02202         SAN FRANCISCOCA
04/05       9.12 DEBIT CARD PURCHASE   040416
                 WILD FLOWER CAF       SAN FRANCISCOCA
```

FDIC
INSURED



USAA
FEDERAL
SAVINGS
BANK

JOCELYN S KIRSCH



0
10

| ACCOUNT NUMBER | ACCOUNT TYPE | STATEMENT PERIOD |
|---|---|---|
| ▪▪▪-0341-8 | USAA SECURE CHECKING | 04/11/16 - 05/10/16 |

OTHER DEBITS

| DATE | AMOUNT | TRANSACTION DESCRIPTION | | |
|---|---|---|---|---|
| 04/27 | 11.96 | DEBIT CARD PURCHASE | 042616 | |
|  |  | NAPA FARMS MARK | SAN FRANCISCO | CA |
| 04/27 | 33.31 | DEBIT CARD PURCHASE | 042616 | |
|  |  | LYFT   *RIDE TU | 8552800278 | CA |
| 04/27 | 36.09 | DEBIT CARD PURCHASE | 042516 | |
|  |  | POSTMATES PAKWA | 8008826106 | CA |
| 04/27 | 43.55 | DEBIT CARD PURCHASE | 042616 | |
|  |  | LYFT   *RIDE TU | 8552800278 | CA |
| 04/28 | 1.79 | DEBIT CARD PURCHASE | 042716 | |
|  |  | JHU APL CAFE 13 | LAUREL | MD |
| 04/28 | 4.71 | DEBIT CARD PURCHASE | 042716 | |
|  |  | BREAD LINE | WASHINGTON | DC |
| 04/28 | 6.65 | DEBIT CARD PURCHASE | 042716 | |
|  |  | LYFT   *RIDE WE | 8552800278 | CA |
| 04/28 | 7.69 | DEBIT CARD PURCHASE | 042716 | |
|  |  | BREAD LINE | WASHINGTON | DC |
| 04/28 | 10.40 | DEBIT CARD PURCHASE | 042716 | |
|  |  | LYFT   *RIDE TU | 8552800278 | CA |
| 04/29 | 8.57 | DEBIT CARD PURCHASE | 042816 | |
|  |  | LYFT   *RIDE TH | 8552800278 | CA |
| 04/29 | 8.58 | DEBIT CARD PURCHASE | 042916 | |
|  |  | STARBUCKS #2177 | Washington | DC |
| 04/29 | 9.15 | DEBIT CARD PURCHASE | 042816 | |
|  |  | LYFT   *RIDE WE | 8552800278 | CA |
| 05/01 | 500.00 | E-CHECK SURCHARGE | 042916 | |
|  |  | HOLD FOR DEPOSIT | 8552800278 | CA |
| 05/02 | 3.55 | LYFT *RIDE FR | 043016 | |
|  | 7.62 | DEBIT CARD PURCHASE | DALLAS | TX |
| 05/02 |  | STARBUCKS WEST2 | 043016 | |
|  | 7.68 | DEBIT CARD PURCHASE | 8552800278 | CA |
| 05/02 |  | LYFT   *RIDE FR | 043016 | |
|  | 9.52 | DEBIT CARD PURCHASE | ARLINGTON | VA |
| 05/02 | 11.65 | DEBIT CARD PURCHASE | 042916 | |
|  |  | LYFT   *RIDE TH | 8552800278 | CA |
| 05/02 | 16.65 | DEBIT CARD PURCHASE | 042916 | |
|  |  | LYFT   *RIDE FR | 8552800278 | CA |
| 05/02 | 23.22 | DEBIT CARD PURCHASE | 043016 | |
|  |  | GRAND CAB | WASHINGTON | DC |

FDIC
INSURED

105846-0814_06



USAA
FEDERAL
SAVINGS
BANK

PAGE   5

JOCELYN S KIRSCH

| ACCOUNT NUMBER | ACCOUNT TYPE | STATEMENT PERIOD |
|---|---|---|
| �it-0341-8 | USAA SECURE CHECKING | 05/10/16 - 06/09/16 |

OTHER DEBITS

DATE.........AMOUNT.TRANSACTION DESCRIPTION

| DATE | AMOUNT | TRANSACTION DESCRIPTION | | |
|---|---|---|---|---|
| 06/01 | 500.00 | E-CHECK SURCHARGE | 053116 | |
| | | HOLD FOR DEPOSIT | SAN FRANCISCO | CA |
| 06/02 | 30.45 | POS DEBIT | 060216 | |
| | | SEPHORA 5833 POWELL ST | SAN FRANCISCO | CA |
| 06/06 | 4.35 | DEBIT CARD PURCHASE | 060316 | |
| | | STARBUCKS STORE | SAN FRANCISCO | CA |
| 06/06 | 4.35 | DEBIT CARD PURCHASE | 060416 | |
| | | STARBUCKS STORE | SAN FRANCISCO | CA |
| 06/06 | 14.99 | DEBIT CARD PURCHASE | 060516 | |
| | | APL* ITUNES.COM | 866-712-7753 CA | |
| 06/06 | 22.50 | ATM DB NONLOCAL | 060616 | |
| | | PAI ISO | SAN FRANCISCO | CA |
| 06/08 | 30.44 | DEBIT CARD PURCHASE | 060816 | |
| | | UBER TECHNOLOGI | 866-576-1039 CA | |
| 06/08 | 42.73 | DEBIT CARD PURCHASE | 060816 | |
| | | UBER   MAY30 US | 8665761039   CA | |
| 06/08 | 150.00 | DEBIT CARD PURCHASE | 060716 | |
| | | WEBPASS INC | 180-09327277 CA | |
| 06/09 | 9.44 | DEBIT CARD PURCHASE | 060816 | |
| | | SQ *HAUS COFFEE | SAN FRANCISCO | CA |
| 06/09 | 20.00 | POS DEBIT | 060916 | |
| | | BART-24TH ST | QPS280SAN FRANCISCO | CA |
| 06/09 | 20.00 | DEBIT CARD PURCHASE | 060816 | |
| | | SQUARESPACE INC | 6465803456   NY | |

ACCOUNT BALANCE SUMMARY

| DATE | BALANCE | DATE | BALANCE |
|---|---|---|---|
| 05/10 | 701.52 | 05/25 | 4,545.36 |
| 05/11 | 102.76 | 05/27 | 4,526.50 |
| 05/12 | 10,761.46 | 05/31 | 12,559.59 |
| 05/13 | 6,718.46 | 06/01 | 12,528.76 |
| 05/16 | 5,947.47 | 06/02 | 11,001.64 |
| 05/17 | 5,940.52 | 06/03 | 10,971.19 |
| 05/18 | 5,451.56 | 06/06 | 10,925.00 |
| 05/20 | 5,171.07 | 06/08 | 10,701.83 |
| 05/23 | 4,866.36 | 06/09 | 10,657.45 |
| 05/24 | 4,729.96 | | |

FDIC
INSURED

105846-0814_06
BMFR1A

# EXHIBIT D



Kirsten Haigh ◄━━━━━━━━━━━

## Fwd: Increase in restitution payments
1 message

**sarah k** <━━━━━━━━━                                    Fri, Jan 26, 2018 at 2:08 PM
To: Kirsten Haigh ◄━━━━━━━━

Sarah ━━━━━
━━━━━━━
Linked in

---------- Forwarded message ----------
From: 
Date: Thu, Feb 18, 2016 at 4:16 PM
Subject: Increase in restitution payments
To: sarah ━━━━━━━

Hi Sarah - Thank you for coming in today. Based on a cursory review of
your financial situation, and the fact that you have approx. $1,023/month
unaccounted for otherwise, I would like to ask that your monthly
restitution payments increase to $500 per month effective 3/1/16. I will
assume you are willing to do so, unless I hear otherwise. Please be sure
to confirm that the auto-payment is set up and monthly payments are being
made. I am happy to give you updates on the outstanding restitution
balance as you need it.

Thank you.

Jennifer J. James
U.S. Probation Officer Specialist, ND/CA
450 Golden Gate Avenue, Suite 17-6684
San Francisco, California 94523



# EXHIBIT E



**intuitivepsychiatry**
INTEGRATIVE MENTAL HEALTH

VIA FAX TO KIRSTEN HAIGH (415.989.7950)

RE: Sarah Jocelyn Kirsch

To Whom it May Concern:

I first began treating Sarah Kirsch in November of 2016.   She was referred to me by her therapist Tara Kline in a time of crisis as Ms. Kirsch's medication was no longer working. I reviewed her medical history, and I met with her and conducted independent testing which revealed scores of 15 on the PHQ9 (depression rating instrument, 15==moderate severe depression) and a top anxiety score of 18 on the GAD7 18 (anxiety rating instrument, 18==severe anxiety)by May of 2017. I believe that her prior medication was, at best, partially effective. We immediately began working together through a course of trial and error as is traditionally done. Although her case is particularly challenging, I am happy to say that in recent months we have found a course of medication that has been effective in addressing her underlying psychological issues.   As of December 2017, her GAD7 was at 5 (remission, anxiety) and PHQ9 was at 6 (very mild, depression.)

While we have finally found what we believe to be the appropriate medication and dosage, we are weaning her off of the two most pivotal medications, clonazepam and modafinil, in preparation for her time in custody.   This is because these two medications are controlled substances that the Bureau of Prisons will not prescribe. However, Ms. Kirsch and I have discussed her coming back to see me once she is released from custody so she can be administered the appropriate medicines. So long as Ms. Kirsch is able to receive the appropriate medication and care, I anticipate that her psychiatric symptoms can be maintained in remission.

Sincerely,

Ravi Hariprasad, MD, MPH
Psychiatrist

The Flood Building • 870 Market Street, Suite 1107 • San Francisco, CA 94102
415.653.3100 [tel] • 415.650.5004 [fax] • www.intuitivesf.com

# EXHIBIT F



●●●●○ AT&T 📶                    2:10 PM                    ↗ 100% 🔋

<                                                    

Sarah

Tue, Jan 24, 11:42 AM

I'm too fat for my pants

My ski pants didn't even come close to closing and I just bought them 6 years ago

I have to dig out old business cards to figure out my work number

Lol

I got my hair done and they put sooooo much product in it

2

 AT&T  LTE          3:55 PM          ⌁ ✳ 97% 🔋

<  

Sarah

Lol

I got my hair done and
they put sooooo much
product in it

Ugh

And were so rough

**To your normal place?**

No a blow dry only
place

I was too lazy too do
my own hair

4

# EXHIBIT E

**Subject:** Re: US v. Kirsch 16-CR-479; Response to Memorandum
**From:** jennifer_james ██████████████████
**Date:** 2/5/2018 2:15 PM
**To:** ██████████████████

Mr. Rappaport:

We are in receipt of your communication titled, "Objections to Memorandum"
in the Jocelyn Kirsch case (CR 16-0479 CRB) dated February 2, 2018. We
respectfully disagree with your assertion that the violation memorandum is
similar to a presentence report for a criminal matter; therefore, do not
believe that the same procedures apply per the local rules. Although I
acknowledge your position on the matters you outlined in your letter, we
will not be making any revisions but I am available to discuss anything
further at your convenience. The dispositional report and recommendation
offered background information for the Court to consider pursuant to 18
U.S.C. 3553(a). We believe Ms. Kirsch's conduct, personal history and
characteristics, the circumstances that have brought her before the Court,
and the kinds of sentences available are relevant for the Court to
consider. That being said, here are a few of my thoughts to some of your
concerns:

1. Attaching the Rolling Stone article:   It is one of many items being
submitted (the presentence report in CR 17-0485 CRB; the violation
memorandum in CR 16-0479 CRB) all of which are intended to provide the
Court with all of the available background information regarding Ms.
Kirsch's cases, both past and present, as she was initially sentenced out
of district.. We believe the Court is in the best position to determine if
it will a) read the article; and b) consider it when fashioning an
acceptable sentence.

2.  Despite only admitting to one of the nine allegations in the Form 12,
we believe the court can consider the conduct in the other eight alleged
violations as a sentencing factor.

Thank you.


Jennifer J. James
U.S. Probation Officer Specialist, ND/CA
450 Golden Gate Avenue, Suite 17-6884
San Francisco, California 94102



